64 F.3d 1015
 41 ERC 1807
 HARROW PRODUCTS, INC., a Delaware corporation; Leigh
Products, Inc., a former Delaware corporation;
and Universal Gerwin, a division of
Harrow Products, Inc.,
Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY; Insurance Company of
North America; Continental Insurance Company;
American Insurance Company; and New
England Insurance Company,
Defendants-Appellees.
 Nos. 93-2309, 94-1335.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 8, 1995.
Decided Sept. 12, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 26, 1995.
 
 Peter Smit, Michael Frederick Kelly (argued and briefed), Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for plaintiffs-appellants.
 Mary E. Rugala, Walter A. Stewart (argued and briefed), Manta & Welge, Philadelphia, PA, for Liberty Mutual Insurance Company defendant-appellee.
 Gary L. Stec, Harvey, Kruse, Westen & Milan, Grand Rapids, MI, Paul R. Koepff, Mudge, Rose, Guthrie, Alexander & Ferdon, Parsippany, NJ, Joseph E. Boury (argued and briefed), O'Melveny & Meyers, Newark, NJ, for Insurance Company of North America defendant-appellee.
 Charles W. Royer, Frances A. Rosinski, Robert E. Graziani (briefed), Timmis & Inman, Detroit, MI, for Continental Insurance Company.
 Janet Callahan Barnes, Thomas D. Allen (briefed), Jennifer N. Pahre, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for American Insurance Company.
 Harold E. Fischer, Jr., J. Richardson Johnson, Early, Lennon, Peters & Crocker, Kalamazoo, MI, Ignatius John Melito (briefed), Amy Gallent, Siff, Rosen & Parker, New York City, for New England Insurance Company.
 Laura A. Foggan (briefed), Wiley, Rein & Fielding, Washington, DC, amicus curiae Insurance Environmental Litigation Association.
 R. Mark Keenan, James Hanson (briefed), Anderson, Kill, Olick & Oshinsky, New York City, amicus curiae Mid-American Legal Foundation.
 Before BOGGS and NORRIS, Circuit Judges; and SPIEGEL, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Harrow Products, Inc., Leigh Products, Inc., and Universal Gerwin (collectively referred to as "Harrow") appeal the denial of their motions for summary judgment, and the granting of motions for summary judgment in favor of the defendants-appellees Liberty Mutual Insurance Company, Insurance Company of North America, Continental Insurance Company, American Insurance Company, and New England Insurance Company ("Appellees"). In granting Appellees' motion, the district court concluded that the Appellees did not have a duty to defend Harrow in various underlying actions. For the reasons set out below, we affirm in part and reverse in part.
 
 
 2
 * The Appellees are insurance companies that provided various degrees of coverage to Harrow. Harrow owned and operated a manufacturing plant in Saranac, Michigan from the mid-1940's to 1985. The Village of Saranac, a plaintiff in an underlying action, relied on wells, apparently located near the Harrow plant, for its water supply.
 
 
 3
 In September 1982, Harrow learned that the Village found contaminants, including trichloroethylene ("TCE"), in the wells. The Michigan Department of Natural Resources ("MDNR") conducted an investigation. Harrow cooperated by permitting monitoring wells to be installed on its property. On February 27, 1985, Harrow received a letter from the MDNR stating that Harrow was the suspected source of the contamination.
 
 
 4
 On March 1, 1985, Harrow notified its primary comprehensive liability insurer, Liberty Mutual Insurance Company, of the potential claim arising out of the MDNR administrative action. The Liberty Mutual policy provided defense and indemnification coverage for bodily injury, property damage and personal injury. The limits were $500,000 for bodily and personal injury, and $100,000 for property damage.
 
 
 5
 Liberty Mutual initially defended Harrow before the MDNR. On January 21, 1987, the MDNR sent Harrow a letter declaring that Harrow's plant was the source of contamination and alleging that Harrow had violated the Water Resources Commission Act, M.S.A. Sec. 3.521 et seq. The MDNR requested a remediation plan. While Liberty Mutual initially continued its defense of Harrow, on March 23, 1989, Liberty Mutual denied further coverage based on the policy's "pollution exclusion." This exclusion reads:
 
 This policy does not apply:
 
 6
 ....
 
 
 7
 (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental ....
 
 
 8
 (emphasis added).
 
 
 9
 Harrow also notified New England Insurance Company, Continental Insurance Company, American Insurance Company, and Insurance Company of North America, its excess liability insurance carriers, of its troubles in December 1988 and January 1989.[1]
 
 
 10
 On October 19, 1989, the Village of Saranac sued Harrow in the United States District Court for the Western District of Michigan, seeking damages and recovery of response costs under CERCLA and the Michigan Environmental Protection Act ("MEPA"). Liberty Mutual and the excess carriers again refused to assume Harrow's defense. On September 13, 1990, Harrow brought two separate suits alleging that the Appellees had the duty to defend and indemnify Harrow in both a civil suit and a state administrative action. Harrow sought defense and indemnification under the "property damage" and "personal injury" coverage provided by Liberty Mutual and the other insurance companies for both the civil suit and administrative action. The district court consolidated the two cases on April 8, 1991. On January 21, 1991, the Village of Saranac dismissed its claims in the underlying action after the parties settled for $475,000.
 
 
 11
 Harrow and the Appellees subsequently filed cross-motions for summary judgment. On August 30, 1993, the district court issued its opinion and judgment. Harrow Products, Inc. v. Liberty Mut. Ins. Co., 833 F.Supp. 1239 (W.D.Mich.1993). The court denied Harrow's motion for partial summary judgment on the duty to indemnify stemming from the property damage clauses and granted Appellees' corresponding motion in light of the pollution exclusion. However, the court did hold that Liberty Mutual had a limited duty to defend Harrow under the property damage coverage in the civil suit, unless Liberty Mutual was prejudiced by Harrow's purported untimely notice. The district court set this issue for trial.
 
 
 12
 The district court also denied Harrow's motion for summary judgment regarding the duty to defend and the duty to indemnify under the personal injury clauses. The court granted Appellees' corresponding motion. Finally, the court also concluded that there was no coverage in the administrative action because it did not constitute a "suit" as required by the insurance policies. Harrow filed a notice of appeal September 28, 1993 (No. 93-2309).
 
 
 13
 Harrow and Liberty Mutual settled the portion of the case related to the untimely notice. The district court entered its final order February 28, 1994. Harrow filed another notice of appeal on March 23, 1994 (No. 94-1335). This court consolidated the two appeals on April 8, 1994.
 
 
 14
 Harrow raises various claims in its appeal of the district court's grant of summary judgment. As to the property damage clauses, Harrow maintains that the TCE discharge was "sudden and accidental" and that this was a question of fact that was inappropriate for the district court to dispose of through summary judgment. Harrow also claims that certain missing policies entitle it to coverage because they did not contain pollution exclusions. In an attempt to evade the pollution exclusion, Harrow argues that it does not apply to the "personal injury endorsement," and that the personal injury clause covers the claims alleged here. Finally, Harrow maintains that the state administrative action did constitute a "suit" as required for coverage under the policies.
 
 II
 
 15
 This court reviews de novo the district court's grant of Appellees' motion for summary judgment. Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). This court must affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When evaluating this appeal, this court must view the evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 16
 The moving party need not support its motion with evidence disproving the nonmoving party's claim, but must only " 'show[ ]'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "The 'mere possibility' of a factual dispute is not enough." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992) (quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir.1986)).
 
 
 17
 Both parties agree that we apply Michigan law in this diversity action. The Michigan Supreme Court has held that exclusion clauses in insurance policies are to be strictly construed against the insurer and that ambiguous contract provisions also must be construed against the insurer and in favor of the insured. Farm Bureau Mutual Ins., Co. v. Stark, 437 Mich. 175, 468 N.W.2d 498, 501 (1991). Furthermore the duty to defend is broader than the duty to indemnify. Stockdale v. Jamison, 416 Mich. 217, 330 N.W.2d 389 (1982). In fact, the insurer must defend a lawsuit even if there are theories of liability that the policy does not cover, if there are theories of recovery that fall within the policy's scope. Dochod v. Central Mutual Ins. Co., 81 Mich.App. 63, 264 N.W.2d 122 (1978).
 
 III
 
 18
 Appellees argue, and the district court held, that the CGL policy's pollution exclusion clause precludes coverage for the contamination of the groundwater as "property damage." Harrow claimed in the district court, as it does here, that these claims stemmed from spills that were sudden and accidental, therefore removing them from the purview of the pollution exclusion. At a minimum, Harrow contends that there remain sufficient disputed issues of material fact to make summary judgment inappropriate.
 
 
 19
 The Michigan Supreme Court has held that the terms "sudden" and "accidental" are clear and unambiguous. Upjohn Co. v. New Hampshire Ins. Co., 438 Mich. 197, 208, 476 N.W.2d 392 (1991). See also FL Aerospace v. Aetna Casualty & Surety Co., 897 F.2d 214 (6th Cir.1990), cert. denied, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); U.S. Fidelity & Guaranty Co. v. Murray Ohio Mfg. Co., 875 F.2d 868 (6th Cir.1989); U.S. Fidelity & Guaranty Co., v. Star Fire Coals, Inc., 856 F.2d 31 (6th Cir.1988). The term "sudden" contains a "temporal element that joins together conceptually the immediate and unexpected." Upjohn, 438 Mich. at 207, 476 N.W.2d 392. The Michigan Supreme Court has defined "accidental" as an event "occurring unexpectedly and unintentionally; by chance." Id. at 207-08, 476 N.W.2d 392. As the district court noted, "[a] sudden and accidental event is one that happens quickly, without warning, and fortuitously or unintentionally." FL Aerospace, 897 F.2d at 219.
 
 
 20
 When a policyholder seeks to invoke the "sudden and accidental" clause, the policyholder "ha[s] the burden of proof, both the burden of producing evidence and the burden of persuasion, as to whether the 'sudden and accidental' exception to the pollution exclusion applies." Fireman's Fund Ins. Co., v. Ex-Cell-O Corp., 702 F.Supp. 1317, 1329 (E.D.Mich.1988) (citing Johnson v. Austin, 406 Mich. 420, 280 N.W.2d 9, 11 (1979)). See also Diedrich v. Harten, 103 Mich.App. 126, 302 N.W.2d 618, 620 (1981). While other courts, interpreting the laws of other states, have held otherwise, it would be strange to force a party to prove a negative, that the spills were not all sudden and accidental. This is particularly true where Harrow is the party most likely to have the relevant information about its operations. Therefore, the burden is on Harrow to demonstrate that the discharges were sudden and accidental and Harrow has failed to meet that burden.
 
 
 21
 Discovery revealed that, far from being "sudden and accidental," all the discharges of pollutants appear planned and intentional. Though Appellees did not bear the burden of bringing forth evidence, they have pointed to a significant body of testimony describing the intentional dumping of pollutants. Bernard Medema, a Harrow employee, testified that "we dumped it, carried it to another department and dumped it down the drain, or we took it outside and threw it out." Similarly, Medema testified that pollutants would often be dumped in the courtyard: "I was told to dump there [the courtyard] by my boss, and I told the people that worked under me to dump there." Al Smith, another Harrow employee, admitted to dumping pollutants by the incinerator and Marcus Aurich, also a Harrow employee, testified that TCE was regularly "pitched out the back door."
 
 
 22
 Harrow, which bears the burden of proof, responds by arguing that Medema was only a foreman, a contention that is irrelevant to his statements about dumping pollutants, and that other people testified that accidental spills may have occurred, or that they never saw intentional dumping. Such rank speculation is insufficient to withstand summary judgment. Similarly, the testimony by Aurich that there were occasional accidental spills, but that he could not remember any specific instances, does little to aid Harrow. It would be charitable to refer to Harrow's evidence, on an issue on which it carries the burden of production and persuasion, as even a scintilla. Remembering that "[t]he 'mere possibility' of a factual dispute is not enough," Mitchell, 964 F.2d at 582 (quoting Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir.1986)), the only conclusion is that Harrow has failed to produce "evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Therefore, the district court correctly determined that Appellees were not required to indemnify Harrow under the property damage clause of the policy because of the pollution exclusion.
 
 IV
 
 23
 Harrow's claim that summary judgment was inappropriate with regard to certain missing policies is equally feeble. Harrow bears the burden of proving coverage by Liberty Mutual policies, as well as the terms and conditions of that coverage. Star Steel Supply Co. v. United States Fidelity and Guaranty Co., 186 Mich.App. 475, 465 N.W.2d 17, 20 (1990). See United States Fidelity and Guaranty Co. v. Thomas Solvent Co., 683 F.Supp. 1139, 1172 (W.D.Mich.1988). Harrow claims that it has offered "substantial, uncontroverted evidence" of coverage by Liberty Mutual during years for which it cannot produce any policy. We need not determine whether Appellees have controverted the evidence, since it is far from substantial.
 
 
 24
 Harrow's evidence amounts to a four-page, twelve-paragraph affidavit by a former employee. The employee, Robert Bush, states that he was employed by Harrow and its predecessors, and that "[b]eginning in 1958, one of my major responsibilities with Harrow Products, Inc. and its predecessor was the purchase of insurance policies...." Bush then goes on to state that they always purchased Liberty Mutual "liability policies," that Liberty Mutual insured all of the facilities, and that the policies, with one exception not relevant here, had no riders or exclusions.
 
 
 25
 We do not doubt Bush's veracity, since to do so would violate the well-established standards for considering summary judgment. Unfortunately, what Bush cannot testify to is the contents of the policies, the scope and amount of coverage, the various rights and responsibilities of the parties, or the notification requirements, to name just a few aspects. It is particularly ironic that Harrow rests its claim on this simple affidavit when the Joint Appendix fills thirteen volumes and is almost four thousand pages long. Copies of insurance policies fill the volumes with page after page of finely printed documents, many in double columns. As in most insurance disputes, the parties are quibbling over individual paragraphs, single lines, and isolated phrases.
 
 
 26
 Of course, we cannot state that a party can never prove the terms of a policy without a copy of the policy or a reasonable facsimile thereof. But the party trying to do so certainly faces a formidable burden. Here no jury could find, absent sheer speculation, the scope of coverage, the relevant notice requirements, and all of the other aspects of the policy, on which coverage often hinges. Nor can Harrow rely on some contemporaneous version of the policy that it has secured from other parties, or from Appellees, absent some clear link, such as there being only one version of the policy, direct testimony linking the sample policy to the one issued, or solely cosmetic differences between versions. The very fact that there are different versions undermines Harrow's claim.[2]
 
 
 27
 In Star Steel Supply, the Michigan Court of Appeals addressed remarkably similar facts. There a party attempted to prove coverage under policies purportedly issued from 1938 to 1962. Though the insured could not produce the policies, it tried to demonstrate through extrinsic evidence both the existence and terms of the policies. The court conceded that there was probably an insurance agreement but, beyond that, there was no evidence of the relevant terms of the policy: "Star Steel has failed to sustain its burden of proving the terms of the policy and ... any judgment would be based upon pure conjecture." Star Steel Supply, 465 N.W.2d at 20. Harrow has offered little more than the assertion that it had insurance. Since the inability to describe the terms of that coverage is fatal, this issue does not warrant reversal.
 
 V
 
 28
 Harrow claims that the personal injury endorsement to the CGL policy entitles it to coverage. The Liberty Mutual Insurance policy includes an example of the clause in question.[3] The personal injury endorsement in the Liberty Mutual policy states that it will pay damages arising out of:(1) false arrest, detention, imprisonment, or malicious prosecution;
 
 
 29
 (2) wrongful entry or eviction or other invasion of the right of private occupancy;
 
 
 30
 (3) a publication or utterance
 
 
 31
 (a) of a libel or slander or other defamatory or disparaging material, or
 
 
 32
 (b) in violation of an individual's right of privacy....
 
 
 33
 J.A. at 904 (emphasis added).
 
 
 34
 The dispute centers on the second clause and whether pollution of the type evident here constitutes a "wrongful entry or eviction or other invasion of the right of private occupancy." The district court held that it did not. The Appellees hotly contest the notion that such a reading is even possible in the face of the pollution exclusion clause and considering the complex and carefully delineated provisions governing property damage in the main body of the CGL policy. Because this is a diversity action and because there is no controlling precedent from the Michigan Supreme Court, or this Circuit, we must attempt to discern the result the Michigan Supreme Court would reach in the event it addressed this issue.
 
 
 35
 The Fifth Circuit has concluded, in the only published federal decision so holding, that an identical, or substantially similar clause, does not afford coverage for the type of claim presented here. In A.J. Gregory v. Tennessee Gas Pipeline Co., 948 F.2d 203 (5th Cir.1991), the Fifth Circuit addressed a claim by landowners who lived adjacent to a polluted lake/reservoir. The owner of the reservoir, a municipality, sought coverage under the personal injury clause in its insurance policy for damage that PCB's in the lake caused to adjoining landowners.
 
 
 36
 The district court denied coverage and the Fifth Circuit affirmed. The court held: "The [district] court stated that to extend Coverage B [the personal injury endorsement] to all property damages which would be covered under Coverage A [the policy itself], would render the pollution exclusion meaningless. This is correct. The risk of property damage caused by pollution, a risk which Titan expressly excluded and one for which the City paid no premium under Coverage A, would be subsumed under Coverage B." Gregory, 948 F.2d at 209.
 
 
 37
 Similarly, in County of Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994), the New York Court of Appeals held that such a reading was simply untenable. In Columbia County, a landowner sued a county for pollution to his soil by the county's "solid waste management disposal site," the modern term for a garbage dump. The county sought legal defense and indemnification from its insurance company. The court held that "[i]t is clear that the personal injury endorsement does not provide coverage for the claims in the underlying complaint." Columbia County, 612 N.Y.S.2d at 349, 634 N.E.2d at 950. The court offered two reasons for this conclusion.
 
 At length, the court explained that
 
 38
 ... the coverage under the personal injury endorsement provision in question was intended to reach only purposeful acts undertaken by the insured or its agents. Evidence that only purposeful acts were to fall within the purview of the personal injury endorsement is provided, in part, by examining the types of torts enumerated in the endorsement in addition to wrongful entry, eviction and invasion: false arrest, detention, imprisonment, malicious prosecution, defamation and invasion of privacy by publication. Read in the context of these other enumerated torts, the provision here could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution.
 
 
 39
 Columbia County, 612 N.Y.S.2d at 349, 634 N.E.2d at 950.
 
 
 40
 The court buttressed this conclusion by noting that, in reading the endorsement in context, any other conclusion would be fallacious because "[u]nder the construction of the policies urged by plaintiff, those pollution-related claims that are eliminated from coverage by the pollution exclusion would nevertheless be included in the personal injury endorsement." Ibid. As such, it would be "illogical to conclude that the claims fail because of the pollution exclusion while also concluding that the insurer wrote a personal injury endorsement to cover the same eventuality." Ibid.
 
 
 41
 At least two intermediate state appellate courts have reached the same conclusion. In O'Brien Energy Sys., Inc. v. American Employers' Ins. Co., 427 Pa.Super. 456, 629 A.2d 957 (1993), review denied, 537 Pa. 633, 642 A.2d 487 (1994), the court soundly rejected the same argument advanced here against an identical clause in another Liberty Mutual policy. The court stated that the "exclusion ... is clear and unambiguous. It is equally applicable to claims for personal injury caused by a wrongful entry or eviction. The insurer did not eliminate the exclusionary language by providing additional coverage of the type listed in the 'personal injury' endorsement." O'Brien Energy Sys., Inc., 629 A.2d at 963. The court's conclusion that "[t]o hold otherwise would emasculate the clear and unambiguous provisions of the pollution exclusion and could not be justified except as an unwarranted straining to reach a result different than that intended by the parties" is similar to the rationale employed by most of the courts to address the issue. Id. at 964.
 
 
 42
 Similarly, the California Court of Appeal, in a case involving an identical personal injury endorsement, also rejected Harrow's proposed interpretation and adopted the position of the Fifth Circuit, the New York Court of Appeals, and the Pennsylvania court. In Titan Corp. v. Aetna Casualty & Surety Co., 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476 (1994) the court reversed a trial court decision holding that the personal injury endorsement covered pollution damages to property. In doing so the court stated
 
 
 43
 The trial court's approach violates basic principles of contract interpretation.
 
 
 44
 ...
 
 
 45
 The policy here unambiguously declares it will not pay for either bodily injury or property damage when the cause of such injury is pollution. Under the interpretation urged by Titan and adopted by the trial court, that exclusion will never operate, because the pollution exclusion's "property damage" provisions are relevant only to eliminate liability for third party property injury. However, under the trial court's interpretation, such injury would simply be relabeled as an "other invasion of the right of private occupancy," rendering the pollution exclusion a dead appendage to the policy.
 
 
 46
 Titan Corp., 27 Cal.Rptr.2d at 486.
 
 
 47
 Finally, the Ninth Circuit has reached a similar conclusion, albeit in an unpublished opinion, in W.H. Breshears, Inc. v. Federated Mutual Ins. Co., 38 F.3d 1219 (Table), 1994 WL 577258, 1994 U.S.App. LEXIS 29245 (9th Cir. Oct. 17, 1994). In Breshears, the court held that the interpretation offered by the plaintiff was "unreasonable because of the clear pollution exclusion provisions for property damage stated within the other coverage that plaintiff held in its policy with Federated." Breshears, 1994 WL 577258, at * 5, 1994 U.S.App. LEXIS 29245, at * 14.
 
 
 48
 The court acknowledged the theoretical possibility that the endorsement, if read standing alone, might provide coverage. But when read in the context of the entire insurance policy, coverage would contradict the clear pollution exclusion for damage to real property. "While it is true that, by itself, 'personal injury' could conceivably be construed under California Law to cover a spill like the one in this case, no reasonable insured could understand the personal injury section of Breshear's policy to cover pollution property damage." Breshears, 1994 WL 577258, at * 5, 1994 U.S.App. LEXIS 29245, at * 14-15. To read the policy as such would "nullify the effect of other clear provisions in the policy." Breshears, 1994 WL 577258, at * 5, 1994 U.S.App. LEXIS 29245, at * 15.
 
 
 49
 As further justification for its decision, the court noted that "pollution damages for a company such as plaintiff can be both high-cost and high-risk liabilities, indicating the unreasonableness of expecting such liabilities to be covered in a limited policy like plaintiff's without their being specifically included in the policy." Ibid. Finally, the court addressed the issue of the lack of a pollution exclusion clause in the personal injury policy. It answered the inquiry with some welcome common sense. "The fact that Coverage B for 'personal injury' does not contain its own pollution exclusion clause merely points out that the insurance company never contemplated (justifiably) that Coverage B might be interpreted to cover pollution damages to land, given the context of the whole policy." Breshears, 1994 WL 577258, at * 5, 1994 U.S.App. LEXIS 29245, at * 16. (emphasis added). See also American Universal Ins. Co. v. Whitewood Custom Treaters, Inc., 707 F.Supp. 1140, 1144 (D.S.D.1989) ("The court finds that the pollution exclusion of the basic policy carries over into the endorsement as fully as if set forth therein"); Morton Int'l, Inc. v. Aetna Casualty & Surety Co., No. c-900283, 1991 WL 201651, * 3, 1991 Ohio App. LEXIS 4657, * 9-10 (Ohio Ct.App., 1st Dist. Oct. 2, 1991) (unpublished) ("The personal-injury liability coverage provided under the endorsement was subject to all of the provisions of the policy not expressly modified by the endorsement and was thus subject to the policy's 'pollution exclusion,'....").
 
 
 50
 The First and Seventh Circuits have come to the opposite conclusion. Nevertheless, we think it is unlikely that the Michigan Supreme Court would consider those opinions persuasive for the same reasons other courts have not. Neither opinion addressed the effect of a clear and unambiguous pollution exclusion elsewhere in the policy on the personal injury endorsement.
 
 
 51
 The holding in Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265 (1st Cir.1990), adopted the contrary view. However, it is both easily distinguished and relies on a superficial analysis of the effect of the absolute pollution exclusion on the entire policy. In Titan Holdings, the court based its decision in part on its conclusion that the pollution exclusion simply did not apply. Various landowners sued the city claiming that the city's operation of a sewage treatment plant and the accompanying odors, noise and brilliant lighting were a nuisance. The court concluded that noise and lighting were simply not pollutants, rendering the pollution exclusion clause immaterial.
 
 
 52
 However, the court did characterize the odors and particulate matter as pollutants. The court concluded that such nuisances amounted to an interference with a private right of occupancy, but they never attempted to harmonize the pollution exclusion with the personal injury endorsement, stating "[t]he pollution exclusion clauses only apply to liability for 'bodily injury and property damage'; they do not apply to coverage for 'personal injury or advertising injury' liability." Titan Holdings, 898 F.2d at 270.
 
 
 53
 The Seventh Circuit addressed the issue in a curious manner. It concluded, despite the pre-existing Fifth Circuit holding (which it never mentioned), that any claim that the pollution exclusion in the underlying policy applies to the personal injury endorsement was not only wrong, it was disingenuous and sanctionable. In Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1042 (7th Cir.1992), the Seventh Circuit held that "Westchester's attempts to circumvent the plain language of the pollution exclusion in its policy are disingenuous and misleading--indeed they are nearly sanctionable--and as such do not warrant any discussion." The court did not explain what was so disingenuous, let alone sanctionable, about claiming that a clause that clearly excluded coverage for property damage from pollution applied to an attempt to recast the pollution damage to property as a "personal injury."
 
 
 54
 Having reviewed the relevant cases, we conclude that if the Michigan Supreme Court addressed this issue it would conclude, as did the New York Court of Appeals, intermediate appellate courts in California and Pennsylvania, and the Fifth and Ninth Circuits, that the personal injury endorsement as written does not contemplate coverage for damage to property by pollution.
 
 
 55
 To hold otherwise would be to contradict the express provisions of a pollution exclusion clause. Mindful that Michigan, as does almost every other state (including New York), construes ambiguities against the insurer and defines exclusions narrowly, we nonetheless conclude that logic is on the side of Appellees. In particular we are cognizant of Michigan's doctrine, also present in roughly similar forms in New York, California, and Pennsylvania, of reading a policy as a whole.
 
 
 56
 Specifically, Michigan law requires a court to "give effect to all words in an insurance contract if they serve a reasonable purpose." Allstate Ins. Co. v. Freeman, 432 Mich. 656, 443 N.W.2d 734, 749 (1989). "Meaning should be given to all terms. Ambiguities should not be forced. Conflicts among clauses should be harmonized." Fresard v. Michigan Millers Mut. Ins. Co., 414 Mich. 686, 327 N.W.2d 286, 289 (1982). Michigan has long adhered to the common sense position that an interpretation of a contract, which is what an insurance policy is, should give effect to all of its provisions.
 
 
 57
 The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and, where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part.
 
 
 58
 Johnston v. Miller, 326 Mich. 682, 40 N.W.2d 770, 771-72 (1950). See also DeBoer v. Geib, 255 Mich. 542, 238 N.W. 226 (1931) ("A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all its provisions.")
 
 
 59
 As noted by the New York Court of Appeals, each enumerated tort in the personal injury clause requires an intentional act.[4] More important, the pollution exclusion applies to injury to property. The essence of the claim for which Harrow seeks defense and indemnification is an injury to property. The endorsement does not alter or amend the coverage of the underlying policy except as it states by its terms. Simply because the personal injury endorsement adds coverage does not mean that the pollution exclusion does not apply to the entire policy. When an endorsement also makes a change in the underlying policy, it expressly says so. To adopt the interpretation urged by Harrow would, as every court that has carefully examined the issue has noted, render the pollution exclusion clause a nullity.
 
 
 60
 In light of the logic of Appellees' arguments, the weight of authority in their favor, and the inadequacy of the cases supporting Harrow's position (those courts that have pondered the First and Seventh Circuit's views have expressly rejected their reasoning), we conclude that the Michigan Supreme Court would hold that Appellees have neither a duty to defend, nor a duty to indemnify, Harrow under the personal injury endorsement to the policy.
 
 VI
 
 61
 To the extent the district court's opinion relies on its holding that an administrative action, started by a PRP letter, is not a "suit" under Michigan law, we must disagree and reverse. While this was the position adopted by this Circuit in Ray Industries, Inc. v. Liberty Mutual Insurance Co., 974 F.2d 754 (6th Cir.1992), the Michigan Supreme Court, ruling after the district court's judgment in this case, has made it clear that, under Michigan law, a PRP letter from the EPA is normally sufficient to trigger an insurer's duty to defend. Michigan Millers Mut. Ins. Co. v. Bronson Plating Co., 445 Mich. 558, 519 N.W.2d 864 (1994). However, the court relied heavily on the coercive powers granted to the EPA, particularly its ability to formulate and implement a remediation plan even without the cooperation of the polluter. Bronson Plating, 519 N.W.2d at 871-75. In its analysis, the Michigan Supreme Court also made it clear that it was not announcing a per se rule: "we wish to emphasize that this opinion should in no way be viewed as intimating that every request for relief should be considered the initiation of a suit that the insurers are obliged to defend. Rather, our determination on this issue is made primarily based on the unique aspects of CERCLA actions and the authority given the EPA under the statute." Id. at 871 n. 13.
 
 
 62
 The Michigan Department of Natural Resources appears to have been the primary catalyst behind the investigation in this case. Nonetheless, several letters from the MDNR mention the EPA, making it unclear exactly what role each agency played. The district court never examined these issues, since our opinion in Ray Industries was dispositive at the time of its decision. Therefore, the matter must be remanded for the district court to make a narrow inquiry into the effect of Bronson Plating and the consequences, if any, of Liberty Mutual's refusal to defend Harrow in the administrative action.
 
 VII
 
 63
 The judgment of the district court is AFFIRMED in part, and REVERSED in part. The matter is REMANDED to the district court for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 By letter to the court, Harrow represented that it had dismissed the claims against New England Insurance Company, Continental Insurance Company and American Insurance Company
 
 
 [2]
 Persuasive authority supporting the argument that a Michigan Court would not countenance Harrow's reliance on the Bush affidavit is found in the Michigan Court Rules. A suit on an insurance policy must be pled with specificity in Michigan courts
 (D) Action on Policy of Insurance
 (1) In an action on a policy of insurance, it is sufficient to allege
 (a) the execution, date, and amount of the policy,
 (b) the premium paid or to be paid,
 (c) the property or risk insured,
 (d) the interest of the insured, and
 (e) the loss.
 MCR 2.112(D).
 
 
 [3]
 Those policies in which the pollution exclusion clause was made explicitly applicable to the personal injury endorsement clearly do not afford Harrow coverage under this theory
 
 
 [4]
 Harrow's claim that because the acts were not sudden and accidental they must have been intentional only illustrates the weakness of its argument. The inquiry into whether a discharge was sudden and accidental as defined by Michigan insurance law is not simply the converse of whether an act is an intentional tort. The two are not, per se, mutually exclusive. To adopt Harrow's position would require us to hold that the carefully drafted and negotiated pollution exclusion is superfluous because if the discharge is sudden and accidental the exclusion does not apply ... and if it is intentional the exclusion still does not apply