94 F.3d 644
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomasine BRIDGEWATER, Plaintiff-Appellant,
v.
HARPER HOSPITAL, Defendant-Appellee.
 No. 95-1503.
 United States Court of Appeals, Sixth Circuit.
 Aug. 13, 1996.
 
 Before: BROWN, MARTIN and SILER, Circuit Judges.
 I.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Thomasine Bridgewater, appeals summary judgment for defendant, Harper Hospital ("Harper"), in this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, seeking to recover disability retirement benefits. For reasons stated hereafter, we AFFIRM.
 
 II.
 
 2
 Bridgewater worked in a kitchen at Harper for about thirty years. She left work and began receiving disability benefits in October 1988, after she fell in that kitchen, injuring her right shoulder. Due to pain in her shoulder, she did not return to work until sometime in 1989. Once she returned to work, the pain in her shoulder increased until she left work again in November 1989. She then began receiving workers' compensation benefits, which were terminated by Harper in 1992.[1] Those benefits were reinstated after a trial before a magistrate at the Michigan Bureau of Workers' Disability.
 
 
 3
 Former and current Harper employees are participants in the Detroit Medical Center Consolidated Pension Plan ("the Plan"). In April 1993, Bridgewater filed an application for benefits under the Plan, claiming that the "nature of her disability" was a "rotary cuff right arm." In May 1993, Harper's benefits manager informed Bridgewater that she was eligible for retirement benefits but not retirement disability benefits.[2] Bridgewater refused to attend a "retirement counseling session" scheduled for May 19, 1993, by Harper's benefits manager.
 
 
 4
 Bridgewater filed this action in Michigan circuit court alleging that she was entitled to disability retirement benefits. Harper removed the case to federal district court. In response to a request for eligibility information from Bridgewater's attorney, Harper's benefits manager sent a letter dated January 5, 1994, containing reasons for Bridgewater's ineligibility and a copy of the written Plan. Bridgewater did not request a review of that determination by a Claims Review Committee as allowed by the Plan.[3] On April 12, 1994, the district court ordered Harper to have Bridgewater's claim reviewed before June 24, 1994.
 
 
 5
 On June 9, 1994, the Claims Review Committee reviewed Bridgewater's request and concluded that further medical evidence was needed.[4] The Committee then sent Bridgewater a letter that stated that she was required to attend a medical examination scheduled for her by the Committee.[5] Bridgewater's attorney informed the Committee that Bridgewater would not submit to the examination and recommended that the Committee use a report prepared by Dr. David Mendelson after his examination of Bridgewater a few days earlier.[6] The Committee obtained a copy of that report and reconsidered Bridgewater's application. The Plan provides that a participant-applicant "may review pertinent Plan documents and submit issues and comments to the Claims Review Committee in writing." The Claims Review Committee offered to allow Bridgewater and her attorney to appear at the meeting at which Bridgewater's application was reconsidered. Neither attended the meeting and nothing else (documents, issues or comments) was submitted to the Claims Review Committee. Bridgewater notes that her attorney was not able to personally attend the Committee meeting because of the short notice provided.
 
 
 6
 Dr. Mendelson wrote that Bridgewater was "quite functional" and, "I do feel [Bridgewater] would be capable of working. I would restrict her to no lifting over shoulder height, however, she certainly should be able to work below shoulder level, without restrictions." Dr. Mendelson also noted that Bridgewater "may have some degenerative rotator cuff pathology" and a "minimal" degenerative impacted humeral head fracture. Dr. Mendelson suggested that Bridgewater undergo a "subacromial decompression." Bridgewater contends,
 
 
 7
 He expressed no opinion about the effect of [Bridgewater's] other medical ailments, together or singly, upon her ability to work. He provided no information about any particular job for which Mrs. Bridgewater was suited by reason of her education, training and experience and which she could perform within his orthopedic restrictions.
 
 
 8
 After considering Dr. Mendelson's report, the Claims Review Committee concluded that Bridgewater did not have a "permanent and total disability" and was thus not entitled to disability retirement benefits. The Claims Review Committee notified Bridgewater of its decision and advised her that she was eligible for an early retirement benefit. Harper's motion for summary judgment was granted and the case was dismissed. Bridgewater appeals from that dismissal.
 
 III.
 
 9
 This court reviews an order granting summary judgment de novo. Harrow Prods., Inc. v. Liberty Mutual Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).
 
 
 10
 The district court, citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), and Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 694 (6th Cir.1989), cert. denied, 495 U.S. 905 (1990), applied an abuse of discretion standard, stating that "a court must review a determination made under an ERISA benefits plan which gives discretion to the plan administrator, under the 'abuse of discretion' standard." In Firestone, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[7] 489 U.S. at 115.
 
 
 11
 When a plan gives discretion to its administrator, this court applies the "arbitrary and capricious" standard of review. Davis, 887 F.2d at 693-94. In Davis, this court held that the "arbitrary and capricious" standard was properly applied where the plan stated that the administrator's decisions "shall be final, conclusive and binding." Id. at 694; accord Bartling v. Fruehauf Corp., 29 F.3d 1062, 1071 (6th Cir.1994) (applying "arbitrary and capricious" standard where plan stated that plan administrator's "administration and interpretation of the Plan shall be final and shall be binding and conclusive upon all persons").
 
 
 12
 Bridgewater's claim for benefits, challenging the decision of the Plan's Claims Review Committee, is pursuant to § 1132(a)(1)(B). The Plan grants discretion to the Claims Review Committee: "Decision of the Claims Review Committee is final." Therefore, the district court's decision, affirming the denial of benefits, must be affirmed if there are no genuine issues of material fact as to whether the Claims Review Committee's denial of benefits was "arbitrary and capricious" and Harper is otherwise entitled to judgment as a matter of law.
 
 
 13
 Bridgewater contends that the "arbitrary and capricious" standard is equivalent to the "abuse of discretion" standard. It is not. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Davis, 887 F.2d at 693 (citation omitted). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. Romstadt v. Allstate Ins. Co., 59 F.3d 608, 615 (6th Cir.1995). That is, even if we are convinced that a mistake has been made, the denial of Bridgewater's benefits must be upheld if it is possible to offer a reasoned explanation for the outcome in this case.
 
 IV.
 
 14
 Bridgewater did not raise these procedural claims in the district court. Absent exceptional circumstances, this court will not address an issue not first raised in the district court. See generally Building Serv. Local 47 Cleaning and Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1398-99 (6th Cir.1995). But, as this issue has been briefed as completely as possible and its resolution would prevent remand on issues of federal statutory law, this court should resolve these issues. See Katt v. Dykhouse, 983 F.2d 690, 695 (6th Cir.1992) (court addresses new issue as it was presented with clarity and completeness and its resolution would materially advance progress of already protracted litigation).
 
 
 15
 Bridgewater contends that Harper failed to comply with 29 U.S.C. § 1133, which provides:
 
 
 16
 In accordance with regulations of the Secretary, every employee benefit plan shall--
 
 
 17
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
 
 A.
 
 18
 Relying on Vanderklok v. Provident Life and Accident Ins. Co., Inc., 956 F.2d 610 (6th Cir.1992), Bridgewater contends that she did not receive adequate notice of the denial of her claim. In Vanderklok, the court held that a plan administrator's failure to set forth the reasons for a denial of a claim was a procedural error that amounted to "a significant error on a question of law, which requires that the decision to deny benefits be overturned."[8] 956 F.2d at 616 (citing Wolfe v. J.C. Penney Co., Inc., 710 F.2d 388, 393 (7th Cir.1983)). The court noted that "the 'reason' given for denial is not a reason, but a conclusion." Id.
 
 
 19
 Bridgewater was given a notice of her dismissal that contained "reasons" for denial:
 
 
 20
 The Committee is now in receipt of a report from Dr. Mendelson, ABOS relating to the conditions on which you based your request for a disability pension.... Based on the requirement of the Plan that you must have been "totally and permanently disabled" (see Plan definition of Permanent and Total Disability enclosed), and the medical opinion regarding your disability, the Committee determined that you are not eligible for a disability pension.
 
 
 21
 The referenced report of Dr. Mendelson states that Bridgewater is not disabled. Unlike the notice in Vanderklok, this notice complied with 29 U.S.C. § 1133 because it "set[ ] forth the specific reasons for [the] denial" and was "written in a manner calculated to be understood by [Bridgewater]."[9] 956 F.2d at 616.
 
 
 22
 Bridgewater contends that she did not "receive a decision on her claim by the Administrative Committee at all. The record in this action is devoid of any evidence that the Administrative Committee ever even considered her claim...." Bridgewater does not contend that she did not receive the above-quoted notice from the Claims Review Committee, which, as demonstrated, complies with 29 U.S.C. § 1133.[10] It is irrelevant that the notice came from the Claims Review Committee instead of the Plan's administrator (the Administrative Committee). Bridgewater fails to recognize that the duties of the Administrative Committee, listed in section 7.6 of the Plan, can be, under the terms of that section, performed by "either [the Administrative Committee] itself and/or through such persons which it deems Proper to assist it in the performance of its duties...." Under the terms of the Plan, the Administrative Committee appoints the Claims Review Committee and grants it discretionary authority to review and make final decisions on claims. In this case, the Claims Review Committee made the final decision on Bridgewater's claim.[11]
 
 
 23
 The minimum standards for compliance with 29 U.S.C. § 1133 are set out at 29 C.F.R. § 2560.503-1. Bridgewater contends that her notice of denial did not comply with § 2560.503-1(e)(1) and (3). Those subsections are implicitly inapplicable to the denial provided Bridgewater because subsection (e)(2) states that if the requirements of those subsections ((e)(1) and (3)) are not met, "the claim shall be deemed denied and the claimant shall be permitted to proceed to the review stage described in paragraph (g) of this section." 29 C.F.R. § 2650.503-1(e)(2). Paragraph (g) requires
 
 
 24
 a reasonable opportunity to appeal a denied claim.... Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may: (i) Request a review upon written application to the plan; (ii) Review pertinent documents; and (iii) Submit issues and comments in writing.
 
 
 25
 29 C.F.R. § 2650.503-1(g). The Plan's provisions comply with the requirements of paragraph (g) and were applied in this case.
 
 B.
 
 26
 Bridgewater contends that she was not given "a reasonable opportunity ... for a full and fair review." 29 U.S.C. § 1311(2). The Claims Review Committee met at least twice to consider Bridgewater's claim. She and her attorney were given the opportunity to submit comments and were provided copies of the written Plan.
 
 
 27
 Bridgewater contends that she was not provided information as to what steps she should take to perfect her claim as required by 29 C.F.R. § 2560.503-1(f). When Bridgewater's claim was initially denied by Harper's benefits manager, Bridgewater was not provided with this type of information. But, when the Claims Review Committee requested that she undergo a medical examination, Bridgewater "w[as] notified of the deficiencies in [her] claim, and nothing further was required to perfect the claim; thus, no new evidence [was] required." Tolley v. Commercial Life Ins. Co., 1993 WL 524284, * 5 (6th Cir. Dec. 17, 1993), cert. denied, 115 S.Ct. 59 (1994). That is, Bridgewater was required, under the Plan, to demonstrate that she was disabled and failed to do so even after refusing to submit to an examination scheduled by the Claims Review Committee (and offering a report of another doctor). Even if the plan administrator "violated the strict letter of § 1133 and its regulations, it did provide plaintiff[ ] with the necessary information to understand why [her] claims were being denied, the true purpose of § 1133. Thus, this error was not 'significant' and does not require reversal."[12] Id.; accord Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir.1991) (requiring bad faith or active concealment of plan provision).
 
 V.
 
 28
 Bridgewater was required, under the Plan, to demonstrate that she was disabled and failed to do so even after refusing to submit to an examination scheduled by the Claims Review Committee (and offering a report of another doctor). Harper has thus met its burden of "offer[ing] a reasoned explanation, based on the evidence, for [this] particular outcome," Davis, 887 F.2d at 693, and the decision to deny those benefits was not arbitrary and capricious.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Harper claims that Bridgewater's employment was terminated "after she failed to return to work from a leave of absence." Bridgewater also had chronic obstructive lung disease, depressive neurosis, hypertension, and diverticulitis. Bridgewater has been awarded Social Security Disability Insurance Benefits
 
 
 [2]
 The Plan provides for benefits to be paid to "[a] Participant whose active employment ... terminates prior to the Participant's sixty-fifth (65th) birthday on account of his Permanent and Total Disability and after he has completed ten (10) or more Years of Service." "Permanent and Total Disability" is defined as "a physical or mental condition ... which prevents the Participant from engaging in any occupation or employment for which he may be suited by education, training or experience, and which, in the opinion of a qualified physician, will be permanent and continuous during the remainder of the Participant's life."
 
 
 [3]
 The Plan provides, "In the event a claim for benefits under the Plan is denied ... [t]he claimant ... shall be entitled to request in writing a review of the denial ... by the Claims Review Committee within sixty (60) days after the claimant receives notice of the denial of his claim."
 
 
 [4]
 The Plan provides that "the Administrative Committee shall have the right to require [a participant-applicant] to submit to an examination by a physician ... selected by the Administrative Committee.... The refusal of a Participant to submit to such medical examination shall result in the suspension of his Disability Retirement Benefits." The Administrative Committee administers the Plan and, under its terms, appoints the Claims Review Committee. The Claims Review Committee "may include some individuals who are not members of the Administrative Committee." The Plan provides the Claims Review Committee with discretionary authority to review and decide all claims for benefits and that a "Decision of the Claims Review Committee on review is final."
 
 
 [5]
 Bridgewater complains that the letter informing her of the Claims Review Committee meeting referred to a "Benefits Committee." Bridgewater also notes that that letter stated that Bridgewater was required to submit to a medical examination the day after the date on which the letter was dated
 
 
 [6]
 Bridgewater notes, "The parties settled on Dr. Mendelson's report as an alternative to an additional examination by [the doctor chosen by the Committee]." Dr. Mendelson examined her in connection with a workers' compensation claim
 
 
 [7]
 The relevant portion of Section 1132(a) provides, "A civil action may be brought--(1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a)(1)(B)
 
 
 [8]
 The court held that because a plan administrator "erroneously interpreted and applied section 1133, its denial of benefits must be reversed and this case must be remanded for a full and fair review of plaintiff's claim pursuant to section 1133(2)." 956 F.2d at 617
 
 
 [9]
 The other cases relied upon by Bridgewater are also distinguishable because those cases involved inadequate notice. See Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (3d Cir.1993); Johnson v. Trustees of Western Conference of Teamsters Pension Trust Fund, 879 F.2d 651, 654 (9th Cir.1989); Bogue v. Ampex Corp., 750 F.Supp. 424 (N.D.Cal.1990)
 
 
 [10]
 An ERISA plaintiff is entitled to an "adequate notice in writing" but not adequate initial notice, then adequate review notice, etc
 
 
 [11]
 Bridgewater's failure to recognize that the Claims Review Committee was acting on behalf of the Administrative Committee leads her to question the district court's statement, "It would appear that the Committee relied solely on Dr. Mendelson's report." Bridgewater notes that she had not been examined by Dr. Mendelson until the Claims Review Committee began meeting to decide her claim
 
 
 [12]
 Bridgewater also bases her argument on the delay in reviewing her claim. The applicable regulation requires that a review be undertaken within 60 days of a request for review. 29 C.F.R. § 2560.503-1(h). Bridgewater never requested review; the denial was reviewed soon after the district court ordered that it be reviewed