RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0210P (6th Cir.)
File Name: 02a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THE CITY OF FLINT,
        *Plaintiff-Appellee,*

    *v.*

LEXINGTON INSURANCE
COMPANY,
        *Defendant-Appellant.*

No. 00-1614

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 93-75492—George E. Woods, District Judge.

Argued: April 24, 2002

Decided and Filed: June 17, 2002

Before: MARTIN, Chief Circuit Judge; COLE, Circuit
Judge; SHARP, District Judge.[*]

_____

[*]The Honorable G. Kendall Sharp, United States District Judge
for the Middle District of Florida, sitting by designation.

1

————————————

**COUNSEL**

**ARGUED:** Robert D. Goldstein, GARAN, LUCOW, MILLER, P.C., Grand Blanc, Michigan, for Appellant. Edward B. Davison, GAULT, DAVISON, P.C., Flint, Michigan, for Appellee. **ON BRIEF:** Robert D. Goldstein, GARAN, LUCOW, MILLER, P.C., Grand Blanc, Michigan, William J. Brickley, GARAN, LUCOW, MILLER, P.C., Detroit, Michigan, for Appellant. Donald G. Rockwell, NILL, KIRBY & ROCKWELL, Flint, Michigan, for Appellee.

————————————

**OPINION**

————————————

G. KENDALL SHARP, District Judge. Plaintiff-Appellee City of Flint ("Flint") seeks indemnity under an insurance policy issued by Defendant-Appellant Lexington Insurance Company ("Lexington") for damages awarded against Flint in a civil rights action ("*Middleton*"). Several white Flint police officers successfully argued that Flint's affirmative action plan ("Plan") was illegal. *See Middleton v. City of Flint*, 92 F.3d 396, 397 (6th Cir. 1996). Flint submitted a claim to Lexington for payment of the adverse judgment and other costs, but Lexington refused to honor the claim, citing the definitions and various exclusions set forth in the policy. Lexington appeals from the district court's grant of summary judgment in Flint's favor.

## I. BACKGROUND

### A. Factual Background

The parties stipulated to the facts of the case. (R. at 114.) Briefly, Flint began investigating an affirmative action program for its police and fire departments in 1984. Flint adopted the Plan in July 1985. Once the Plan was adopted,

do not legislate or even enforce affirmative action programs. They simply obey them at the behest of the creating municipality. In this case, the Flint Police Department obeyed a Flint mandate for affirmative action in nearly the exact manner as the Flint Fire Department. Flint mandated the Plan, implemented the Plan and enforced the Plan. The Flint Police Department had no discretion to alter or discontinue the Plan. Accordingly, Lexington's contention that the Plan originated with the Flint Police Department is a strained construction of "law enforcement," and the Court will not recognize it in light of the unambiguous contract.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

Flint amended the collective bargaining agreement between Flint and the Flint Police Department to reflect the change. The Plan required promotions of entry-level police officers to the rank of sergeant to be made in a 1:1 ratio, alternating between minority and non-minority candidates. Both the Flint Police and Fire Departments adopted the Plan, although the Flint Fire Department rejected the 1:1 ratio. After arbitration, an arbitrator imposed a 2:3 ratio.

After implementation of the Plan, eleven Flint police officers were passed over for promotions between 1987 and 1990. They sued Flint, claiming that but for the allegedly illegal affirmative action program, they would have received their promotions. This Court found that the Plan was not narrowly tailored to achieve its claimed interest and reversed a district court's grant of summary judgment in Flint's favor. *Middleton*, 92 F.3d at 413.

Lexington issued Flint a policy entitled "Public Officials and Employees Liability Insurance Policy" with a policy period of 1 July 1989 to 1 July 1990. When the *Middleton* action began, Flint requested defense and indemnification from Lexington. Citing the definitions[1] and exclusions[2] policy sections, Lexington determined that the claim "arose out of the activities of a law enforcement agency" and denied coverage.

#### B. Procedural Background

Flint subsequently filed an action for declaratory judgment. Senior Judge Stewart Newblatt granted partial summary

---

[1] "Insured shall mean . . . Members of commissions, boards or other units operating by and under the jurisdiction of [the City] . . . provided that the insurance afforded shall not extend to . . . law enforcement agencies." (R. at 25-26.)

[2] "[Lexington] shall not be liable to make any payment of Loss in connection with any claim . . . arising out of the activities of any law enforcement agency or personnel." (R. at 28.)

judgment in Flint's favor. Notably, he ruled that the exclusion upon which Lexington relied was invalid. Judge Newblatt reserved decision on the scope of some exclusions, however, and transferred the case to Judge George Woods. Judge Woods noted that he was not obligated to adhere to Judge Newblatt's prior ruling. Judge Woods found that the identity of the Plan's originator was a material fact precluding summary judgment. Following additional discovery,[3] Judge Woods granted summary judgment in Flint's favor on this remaining issue, the sole matter appealed to this Court. The parties entered a stipulated judgment for $831,749.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). The facts in this case are not disputed; we are faced solely with the legal construction of an insurance policy. *See Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996).

### B. Analysis

Michigan law requires the court to examine the policy as a whole and give meaning to all its terms. *Fresard v. Michigan Millers Mut. Ins. Co.*, 327 N.W. 2d 686, 692-96 (Mich. 1982). We interpret the policy's terms under their commonly construed meanings and will not apply a "technical or strained

---

[3]Prior to additional discovery, the district court did not possess a copy of the Plan filed with the Michigan Civil Rights Commission or the City Police Department's collective bargaining agreement.

construction." *Hosking v. State Farm Mut. Auto. Ins. Co.*, 499 N.W. 2d 436, 437 (Mich. 1993); *see also Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W. 2d 392, 397 (Mich. 1991). Absent ambiguity, the terms of the contract are "not open to construction and must be enforced as written." *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1554 (E.D. Mich. 1991) (construing Michigan law); *see also Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (construing Michigan law). Exclusionary policies must be strictly construed against the insurer. *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995) (construing Michigan law).

The court accepts the parties' joint concession that the policy is not ambiguous. The district court went to great lengths explaining the policy's genesis and implementation. In doing so, the district court reviewed the Plan itself, as well as supporting affidavits.

The policy is clearly identified as a contract between Lexington and Flint, not any subdivision of Flint such as the Flint Police Department. Under the definitions section of the policy, there is no doubt that Flint is an insured. To conclude otherwise would ignore the clear and unambiguous terms of the contract. Furthermore, the policy obligates Lexington to "pay on behalf of the [Flint] all Loss which [Flint] shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act. . . ." (R. at 25.) Therefore, under the plain language of the contract, Lexington is obligated to indemnify Flint for *Middleton* unless a policy exclusion applies.

Strict construction of the exclusions section mandates coverage. "Law enforcement" is not specifically defined in the policy, and as such, must be construed strictly against Lexington. *Harrow Products*, 64 F.3d at 1019. We need not reach outside the four corners of the policy for an interpretation of "law enforcement" that suits Lexington, when the commonly construed meaning plainly suffices. *Upjohn*, 476 N.W. 2d at 397. Put simply, police departments