OPINION OF THE COURT
 

 Smith, J.
 

 This is a declaratory judgment action in which plaintiff seeks an order that defendants are required to provide legal representation and coverage for an action brought against it. Specifically, the issue is whether "personal injury” endorsements in policies issued to plaintiff by defendants require representation and coverage for liability arising from alleged property damage resulting from the leaching of toxic chemicals.
 

 I
 

 Each of the defendants insured plaintiff under comprehen
 
 *624
 
 sive general liability policies during the period in question.
 
 [1]
 
 All of the policies contained a personal injury and advertising injury liability endorsement, under which the insurers agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury * * * to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured’s business.” Personal injury was defined to include injury arising out of "wrongful entry or eviction or other invasion of the right of private occupancy.”
 
 [2]
 

 The subject policies also provided coverage, with certain exceptions, for property damage, bodily injury and personal injury liability. The sections of the policies providing coverage for bodily injury and property damage stated that the insurers would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injur[
 
 3
 
 ] or property damag[
 
 4
 
 ] to which this insurance applies caused by an occurrence,” and that the insurers had a duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.
 

 Each of the policies contained an exclusion for pollution-related bodily injury and property damage. Specifically, the policies excluded from coverage "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere
 
 *625
 
 or any water course or body of water.” The exclusion did not apply "if such discharge, dispersal, release or escape [was] sudden and accidental.”
 
 [5]
 

 II
 

 The facts giving rise to the underlying action, as well as to this action, are as follows. In 1981, the County agreed to develop a solid waste management disposal system in the Town of Claverack (Town), a municipality within the County. In May 1986, after they were charged with violations of the Environmental Conservation Law, the County and the Town signed a Department of Conservation (DEC) Order on Consent, which stated, among other things, that the "solid waste management facility is currently discharging leachate into the groundwater and is thus in violation of Sections 360.8 (a) (3) and 703.5 of 6 NYCRR.” A penalty of $1,000, assessed against the Town, was suspended provided the Town closed the solid waste management facility completely by December 30, 1988.
 

 In 1988, when the County did not cease using the facility as a solid waste management disposal site, the Town initiated an action against it, alleging, among other things, that the solid waste management facility on the Town property was discharging dangerously high levels of leachate into the groundwater, a primary source of water, thereby impairing the health and safety of all persons using the water source and constituting a public nuisance, and that the County expanded the facility, all in violation of the DEC regulations.
 

 In January 1989, H.K.S. Hunt Club, Inc. (HKS), a corporation that owns property adjacent to the facility, commenced an action against the County and the Town
 
 (H.K.S. Hunt Club v Town of Claverack & County of Columbia
 
 [the underlying
 
 *626
 
 action]) seeking injunctive relief and damages for the impairment of the "soil, air, ground and surface waters * * * under and over [its] property” by leachate pollution and contamination from the solid waste management disposal site. The complaint incorporated the allegations in the Town’s complaint against the County and alleged further that the use of the property by the County constitutes a "continuing nuisance” and a "continuing trespass,” and "has put [HKS] out of its own property in an unlawful manner and continues to hold and keep [HKS] out of its property by unlawful means.” The County then requested that defendants provide it with a defense under their insurance policies. Defendants disclaimed coverage, asserting that pollution exclusion clauses in the subject policies relieved them of any duty to defend the County in the underlying action.
 

 The County commenced this action seeking a declaration of its rights and liabilities under the policies issued by defendants. Defendant Aetna moved and defendants Firemen’s and Continental cross-moved for summary judgment dismissing the complaint. Plaintiff cross-moved for partial summary judgment on the issue of defendants’ duty to defend the underlying action. Supreme Court granted defendants’ motion and cross motion for summary judgment and denied the County’s cross motion for partial summary judgment, concluding that defendants were not obligated to defend the action because (1) the complaint in that action alleged that the County intentionally deposited refuse and other solid waste into the solid waste management facility, which risk is expressly excluded from coverage, (2) the complaint did not allege a claim of "wrongful entry or eviction or other invasion of the right of private occupancy,” and (3) the County’s willful violation of a penal statute or ordinance precludes coverage under the Personal Injury and Advertising Injury Liability endorsement of the policies. The Appellate Division affirmed, with two Justices dissenting (189 AD2d 391). The majority concluded that defendants are not obligated to defend the County in the underlying action because (1) the allegations in the underlying complaint fall squarely within the pollution exclusions, precluding coverage under the bodily injury/property damage provisions in the subject policies, and (2) the underlying complaint does not allege a "wrongful entry or eviction or other invasion of the right of private occupancy” cause of action so as to come within the Personal Injury and Advertising Injury Liability endorsement
 
 (see, id.).
 
 The dissent deter
 
 *627
 
 mined that the defendants have a duty to defend the County in the underlying action because the complaint in that action alleges sufficient facts to bring the claim of trespass within the scope of the "wrongful entry” provision in the Personal Injury and Advertising Injury Liability endorsements in the subject policies
 
 (see, id.).
 
 The County of Columbia appeals as of right pursuant to CPLR 5601 (a).
 

 Ill
 

 It is plaintiffs contention that the personal injury endorsement obligates defendants to provide a defense in the underlying action. Defendants claim that the personal injury endorsement is inapplicable and that, in any event, the pollution exclusion eliminates both coverage and any duty to defend.
 

 "The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer”
 
 (Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 310;
 
 see also, Ruder & Finn v Seaboard Sur. Co.,
 
 52 NY2d 663, 669). The insurer bears the burden of proving that the facts alleged in the complaint do not fit within the range of the policy’s coverage
 
 (see, International Paper Co. v Continental Cas. Co.,
 
 35 NY2d 322, 327;
 
 Prashker v United States Guar. Co.,
 
 1 NY2d 584, 592).
 

 It is clear that the personal injury endorsement does not provide coverage for the claims in the underlying complaint. As stated, that complaint alleged, among other things, that the use of the property by the County constitutes a "continuing nuisance” and a "continuing trespass,” and has put HKS "out of its own property in an unlawful manner and continues to hold and keep [HKS] out of its property by unlawful means.” These allegations of continuing nuisance, continuing trespass and invasion are not among the enumerated offenses covered by the personal injury endorsement. Nor do those offenses constitute the enumerated offense of "wrongful entry or eviction or other invasion of the right of private occupancy.”
 

 We agree with the Appellate Division that the coverage under the personal injury endorsement provision in question was intended to reach only purposeful acts undertaken by the insured or its agents. Evidence that only purposeful acts were to fall within the purview of the personal injury endorsement is provided, in part, by examining the types of torts enumerated in the endorsement in addition to wrongful entry, evic
 
 *628
 
 tian and invasion: false arrest, detention, imprisonment, malicious prosecution, defamation and invasion of privacy by publication. Read in the context of these other enumerated torts, the provision here could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution.
 

 Moreover, it is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement
 
 (see, Birnbaum v Jamestown Mut. Ins. Co.,
 
 298 NY 305, 310;
 
 Thompson-Starrett Co. v American Mut. Liab. Ins. Co.,
 
 276 NY 266, 270;
 
 see also, Matter of Garelick v Rosen,
 
 274 NY 64). As noted, defendants provided coverage for bodily injury and property damage to the County through broad form comprehensive general liability insurance polices, all of which contain pollution exclusions. Under the construction of the policies urged by plaintiff, those pollution-related claims that are eliminated from coverage by the pollution exclusion would nevertheless be included in the personal injury endorsement. However, such construction does not give full force and effect to the words in the policy. An insurance contract should not be read so that some provisions are rendered meaningless
 
 (see, Bretton v Mutual of Omaha Ins. Co.,
 
 110 AD2d 46, 49-50,
 
 affd for reasons stated at App Div
 
 66 NY2d 1020). It would be illogical to conclude that the claims fail because of the pollution exclusion while also concluding that the insurer wrote a personal injury endorsement to cover the same eventuality. Thus, we conclude that the coverage provided for in the personal injury endorsement is not available to injuries arising from pollution-generated property damage.
 

 It should be noted that a number of the jurisdictions that have considered this question have held that the standard personal injury endorsement affords no coverage for pollution-related property damage
 
 (see, e.g., Gregory v Tennessee Gas Pipeline Co.,
 
 948 F2d 203, 209;
 
 Agway, Inc. v Travelers Indem. Co.,
 
 US Dist Ct, ND NY, Dec. 6, 1993, No. 93-CV-557 [slip opn];
 
 National Union Fire Ins. Co. v Rhone-Poulenc Basic Chems. Co.,
 
 1992 WL 111201 [Del Super Ct 1992];
 
 Straits Steel & Wire Co. v Michigan Millers Mut. Ins. Co.,
 
 Mich Cir Ct, June 10, 1992, No. 91-72991-CK [slip opn];
 
 Morton Thiokol, Inc. v General Acc. Ins. Co.,
 
 NJ Super Ct, Aug. 27, 1987, No. C-3956-85 [slip opn];
 
 see also, W.H. Breshears, Inc. v Federated Mut. Ins. Co.,
 
 832 F Supp 288;
 
 but see, e.g., City of Edgerton v
 
 
 *629
 

 General Cos. Co.,
 
 172 Wis 2d 518, 493 NW2d 768;
 
 Titan Holdings Syndicate v City of Keene,
 
 898 F2d 265;
 
 Northrop Corp. v American Motorist Ins. Co.,
 
 Cal Super Ct, Apr. 7, 1992, No. C710571;
 
 Hirschberg v Lumbermens Mut. Cas.,
 
 798 F Supp 600 [ND Cal 1992]).
 

 The County’s argument that defendant Aetna is independently obligated to defend the underlying action because its policies contain a schedule that lists "Garbage or Refuse Dumps” as a rating classification, is untenable. The schedule expressly states that the rating classifications, except as specifically provided elsewhere, do not modify any of the provisions of the policy. Nowhere do the policies provide that the rating classifications alter the covered risks or exclusions.
 

 Having concluded that defendants are not obligated to defend the County in the underlying action, we do not reach the remaining arguments.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Ciparick concur; Judge Levine taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . During the period June 1, 1980 through June 1, 1986, defendant Aetna Casualty & Surety Company (Aetna) insured plaintiff County under comprehensive general liability policies. From June 1, 1986 through June 1, 1987, defendant Firemen’s Insurance Company of Newark, N. J. (Firemen’s) provided similar coverage, as did defendant Continental Insurance Company (Continental) from June 1, 1986 through June 1, 1990.
 

 [2]
 

 . The Continental policy in effect from June 1, 1988 through June 1, 1989 defined personal injury to include "[wjrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies.”
 

 [3]
 

 . In several of the policies, bodily injury was defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.”
 

 [4]
 

 . The policies defined property damage as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.”
 

 [5]
 

 . The Aetna policy in effect from June 1, 1985 through June 1, 1986, as well as the Firemen’s policy, contained a pollution exclusion that excluded from coverage "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: * ** * at or from premises owned, rented or occupied by the named insured * * * [or] at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste.” Also excluded from coverage was "any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.” Pollutants were defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.” Waste included "materials to be recycled, reconditioned or reclaimed.”