MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff–Appellant,

v.

BELIZE NY, INC., Lydia Jimenez, as Administratrix of the Estate of Mayra Rentas, deceased, Patrick Glynn, Sinead Glynn, United House of Prayer for all People of the Church on the Rock of the Apostolic Faith, Marjorie Lopez, as Administratrix of the Goods, Chattels and Credits that were of Olga Garcia, Hubert Swaringer, Illya Brunner, as Administratrix of the Estate of Kareem Brunner, deceased, Ivette Melendez, as Administratrix of the Estate of Cythia Martinez a/k/a Cynthia Martinez, deceased, Jose Ramos, as Administrator of the Estate of Luz Ramos a/k/a Luz M. Ramos–Ortiz, deceased, Oscar Marrero, Jr., as Administrator of the Estate, Goods, Chattels and Credits of Angelina Marrero, deceased, Isardeen Chaitram, Alan Grossberg, Sharon Grossberg, Kemper National Insurance Companies, a/s/o Won Duck Kim, Menstown Stores Inc., Patricia Ramautar, as Administratrix of the Estate of Garnette D. Ramautar and Jacques Douek, Defendants–Appellees.

Docket No. 00–9228.

United States Court of Appeals, Second Circuit.

Argued Aug. 10, 2001.

Decided Jan. 11, 2002.

Brian S. Sokoloff, Miranda & Sokoloff, New York, N.Y. (Steven Sledzik, of counsel), for Plaintiff–Appellant.

Eric S. Connuck, Piper Marbury Rudnick & Wolfe LLP, New York, N.Y. (Mary E. Gately, Piper Marbury Rudnick & Wolfe LLP, Washington, D.C., of counsel), for Defendants–Appellees.

Before MINER, JACOBS and CALABRESI, Circuit Judges.

MINER, Circuit Judge.

Plaintiff-appellant the Mount Vernon Fire Insurance Company ("Mount Vernon") appeals from a summary judgment entered in the United States District Court for the Southern District of New York (Pauley, *J.*) dismissing its declaratory action against defendants-appellees Belize NY, Inc., Lydia Jimenez, Patrick Glynn, Sinead Glynn, United House of Prayer for all People of the Church on the Rock of the Apostolic Faith, Marjorie Lopez, Hubert Swaringer, Illya Brunner, Ivette Melendez, Jose Ramos, Oscar Marrero, Jr., Isardeen Chaitram, Alan Grossberg, Sharon Grossberg, Kemper National Insurance Companies a/s/o Won Duck Kim, Menstown Stores, Inc., Patricia Ramautar, and Jacques Douek. Mount Vernon sought the declaratory judgment following the commencement of

several direct and third-party actions in state court (the "state lawsuits") brought by various defendants-appellees against its insured, defendant-appellee Belize NY, Inc. ("Belize"). Mount Vernon alleges that it is not required to defend and indemnify Belize for liability arising out of the performance of work at a construction site. The state lawsuits are premised on various allegations of negligence.

Mount Vernon moved for summary judgment and defendants-appellees United House of Prayer for all People of the Church on the Rock of the Apostolic Faith and Hubert Swaringer, its pastor, (collectively, "the Church") cross-moved for summary judgment.[1] The district court granted the Church's cross-motion, rejecting Mount Vernon's contention that certain classifications set forth in the policy served to limit the coverage claimed. For the reasons that follow, we affirm.

## BACKGROUND

Mount Vernon is an insurance company organized under the laws of Pennsylvania. Belize is a general construction company formed by Cecil Usher, located in New York City and incorporated under the laws of New York. Usher, a New York resident, is the owner of the corporation. On June 1, 1995, Mount Vernon issued a commercial general liability insurance policy (the "Policy") to Belize through an insurance broker, David Hampel, for one year of coverage. The Policy's first page, entitled "Policy Declarations" (the "Declarations Page"), describes the insured as "Belize N.Y., Inc." The Declarations Page classifies the "Form of Business" as "Corporation," the "Business Description" as "Carpentry" and indicates that Belize was afforded commercial liability insurance in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate for the period June 1, 1995 to June 1, 1996. Two classifications are listed under "Premium Computation" on the Declarations Page: "Carpentry–Interior–001" and "Carpentry–001." No further mention of these two terms is made in the Policy.

The text of the Policy provides, in relevant part:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

 a. [Mount Vernon] will pay those sums that [Belize] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Mount Vernon] will have the right and duty to defend any "suit" seeking those damages....

 ....

 b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

 (2) The "bodily injury" or "property damage" occurs during the policy period.[2]

---

1. Although Mount Vernon moved for summary judgment as to all defendants, only Patrick Glynn, Sinead Glynn, Jacques Douek, Lydia Jimenez, and Marjorie Lopez offered submissions in support of the Church's position. Of the defendants, only the Church has participated in this appeal.

2. "Bodily injury" is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Property damage" is defined to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property ... [or] [l]oss of use of tangible

United House of Prayer for all People of the Church on the Rock of the Apostolic Faith ("United House") is a religious entity that maintains a place of worship on the second floor of a two-story building (the "United House building") it owns at 272 West 125th Street, New York, New York. Sometime in 1994, United House undertook a two-step project to renovate the second floor. Phase one involved demolition work and phase two involved reconstruction of the space and the addition of dining facilities. United House hired LEMA International, Ltd. ("LEMA") as the general contractor. Belize was retained by Jim Farrell of LEMA to perform the demolition work. Belize charged $60,000 for the work, which it in turn subcontracted to others. A few months later, Belize was again retained by Farrell, this time to assist in the supervision of LEMA's subcontractors. Belize's duties, through Usher, were to make sure that the subcontractors were properly performing their assignments and completing them according to a time chart prepared by LEMA. Sometime in 1995, LEMA ceased to be the general contractor on the project, and was replaced by LMA International, Ltd. ("LMA"). Farrell, who was now employed by LMA, informed Belize of this change and instructed Belize to present its invoices to LMA.

On December 8, 1995, during the course of the renovation work, a person entered the United House building, shot several people with a firearm, and started a fire before taking his own life. As a result, seven people died and several others were injured. On April 19, 1996, William D. Blakely, United House's attorney, sent a letter to Belize explaining that two law-

suits had been filed against United House and warning that it was likely that Belize would be sued individually or joined as a party in pending lawsuits. Immediately after receiving Blakely's letter, Usher notified Mount Vernon of the December 8, 1995 incident and the possibility that claims might be asserted against Belize. As Blakely had predicted, an action was commenced on June 26, 1996, in the Supreme Court of the State of New York, Bronx County, against Belize and others, on behalf of an individual who died as a result of injuries she sustained in the December 8, 1995 fire (the "Jimenez lawsuit"). The verified complaint includes allegations, *inter alia*, that the sprinkler system in the building was unlawfully shut off and that "LMA bricked over, eliminated and/or made inoperable, one or more means of ingress and egress to the premises." Belize was charged generally with "negligence, carelessness and recklessness." In addition to the Jimenez lawsuit, other lawsuits involving both direct and third-party claims have been asserted against Belize, all relating to the events that occurred at the United House building on December 8, 1995. These state lawsuits were commenced by the parties named as defendants-appellees here (other than Belize and the Church).

On October 9, 1996, following an investigation of the occurrences at the construction site, Mount Vernon by letter agreed to represent Belize. However, on December 7, 1998, Mount Vernon announced by letter that it would not defend or indemnify Belize because of "new assertions regarding Belize's potential involvement" in the renovation project. The letter also stated that Mount Vernon would be "starting an im-

---

property that is not physically injured." "Occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful condi-

tions." "Coverage territory" is defined to include "[t]he United States of America (including its territories and possessions)...."

mediate declaratory judgment action in the Federal Court." It was Mount Vernon's contention that Belize was not engaging in carpentry in the building at the time of the December 8, 1995 incident, and that only liabilities created as a result of carpentry work were covered under the Policy. On December 17, 1998, pursuant to 28 U.S.C. § 2201, Mount Vernon commenced the declaratory action giving rise to this appeal. Subject matter jurisdiction was based on diversity of citizenship under the provisions of 28 U.S.C. § 1332. The gravamen of the complaint is that Belize was acting in a supervisory capacity rather than performing carpentry work in the building at the time of the December 8 incident and therefore that any liabilities it incurred were not covered under the Policy.

Mount Vernon promptly moved for summary judgment on the fourth of the four claims in its complaint, that the work being performed by Belize on December 8 was outside the classification of work set forth on the Declarations Page of the Policy.[3] The Church cross-moved for summary judgment with respect to all four of Mount Vernon's claims, and Mount Vernon did not challenge dismissal of the first three. On August 23, 2000, the district court granted the Church's motion for summary judgment in its entirety, denied Mount Vernon's, and dismissed the complaint, concluding, *inter alia*, that the Policy did not provide a limitation on coverage based on the business classifications set forth under "Premium Computation" and on the Declarations Page. The district court reasoned that Mount Vernon had failed to include "clear and unmistakable language" as required under New York law, limiting

the insurance risk to carpentry. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

 We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 97 (2d Cir.2001); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir.2000). Summary judgment is appropriate only where no reasonable trier of fact could find for the nonmoving party. *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991). It is said to be warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We apply this standard to the following analysis.

### II. *New York Insurance Law*

 The New York approach to the interpretation of contracts of insurance is "to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach, N.Y.*

---

**3.** Mount Vernon alleged in its first cause of action that Belize failed to give written notice of the events that transpired on December 8, 1995; in its second cause of action that Belize, as the policyholder, was not working at the building, and therefore that no coverage was available; in its third cause of action that coverage was precluded under the policy's independent contractor's exclusion.

*v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). Within certain limitations not applicable to the commercial general liability policy under examination here, "the parties may make such contracts as they choose, or may qualify or limit the liability assumed, either by specification of the amount of the indemnity or by the enumeration of certain perils, or by the exclusion of specified perils." 70 N.Y. Jur.2d Insurance § 1400 (1998). The wording of limitations or qualifications, as in all "language found in insurance policies should be examined 'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.'" *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2d Cir. 1986) (quoting *Champion Int'l Corp. v. Cont'l Cas. Co.,* 546 F.2d 502, 505 (2d Cir.1976)). With respect to exclusions from coverage, the same must be set forth clearly and unmistakably, not be subject to any other reasonable interpretation, and fit the particular case. *Cont'l Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 972, 609 N.E.2d 506, 512 (1993).

■ Mount Vernon here does not contend that its liability is negated by a specific exclusionary provision. Rather, it takes the position that its risk is limited to carpentry operations in accordance with the classifications set forth in the Policy. But this limitation is nowhere apparent in the plain meaning of the words chosen by the parties to effect the purpose sought to be achieved. Because the Policy does not contain any specific language indicating that the classifications determine the scope of the coverage, Mount Vernon argues that there was an "obvious meeting of the minds" as to the scope of risk undertaken by virtue of the stated classifications. In support of this theory, Mount Vernon argues that Belize intended to purchase insurance limited to carpentry operations and only directed its broker to procure insurance to carry out that intention. Mount Vernon further argues that Belize was aware that the calculations of the premiums reflected the number of Belize's employees engaged in carpentry operations, and that Belize accordingly was on notice that the Policy was limited to coverage relating to carpentry work. These arguments find no substantial support in the evidentiary material submitted by the parties and, more importantly, are contradicted by the absence of any limiting language in the insurance policy.

Mount Vernon also relies on two New York cases, *Lionel Freedman, Inc. v. Glens Falls Insurance Co.,* 27 N.Y.2d 364, 318 N.Y.S.2d 303, 267 N.E.2d 93 (1971), and *Ducks Hockey Club, Inc. v. Mount Vernon Fire Insurance Co.,* 39 A.D.2d 568, 331 N.Y.S.2d 743 (2d Dep't 1972) (mem.), for the proposition that "New York law recognizes that liability insurance policies that describe the scope of coverage pursuant to descriptions known as classifications limit coverage in accord with economic realities." According to Mount Vernon, these precedents demonstrate that New York law permits an insurer to deny coverage based on the classification listings set forth in a policy, even though a policy does not contain clear and unambiguous language indicating that the classification listings in the policy limit coverage.

The Church contends that the Policy provides coverage for damages resulting from bodily injury or property damage caused by an occurrence during the coverage period, and that under New York law the classifications portion in a policy may not limit that provision unless explicitly stated in the policy. The Church cites *County of Columbia v. Continental Insurance Co.,* 83 N.Y.2d 618, 612 N.Y.S.2d 345,

634 N.E.2d 946 (1994), as directly rejecting Mount Vernon's contention.

*Lionel* was a negligence action brought against an insured relating to an accident in which a man fell into an elevator shaft and subsequently died from the injuries sustained in the fall. The insured, who was charged with negligence in the maintenance of the elevator, sought to have his insurance company defend and indemnify him as provided in his insurance policy. The policy available to the insured set forth four classifications of covered hazards: "(1) Premises–Operations; (2) Elevators; (3) Independent Contractors; and (4) Products–Completed Operations." *Lionel,* 27 N.Y.2d at 366, 318 N.Y.S.2d 303, 267 N.E.2d 93. However, the insured chose to purchase coverage only for the first hazard, "Premises–Operations," which was defined as covering "the ownership, maintenance or use of premises, and all operations." *Id.* at 367, 318 N.Y.S.2d 303, 267 N.E.2d 93. Additionally, a section in the policy entitled "EXCLUSIONS" provided that coverage under the first hazard did not apply "to elevators." *Id.* At issue was whether or not the fall down the elevator shaft was excluded, since the insured had not purchased coverage under the second hazard. The New York Court of Appeals held that the insured was not entitled to coverage based on its policy because "[t]he insurance contract was drawn so as to put a prospective purchaser of insurance on notice that if he wanted elevator protection, he had to pay an additional premium." *Id.* at 368, 318 N.Y.S.2d 303, 267 N.E.2d 93 (quoting *Refined Syrups & Sugars, Inc. v. Travelers Ins. Co.,* 136 F.Supp. 907, 911 (S.D.N.Y. 1954)).

In *Ducks,* an ice-skater sued the insured for an injury sustained while skating in the insured's rink. The insurer disclaimed coverage, based upon the policy, which provided insurance for " 'Exhibitons [sic]— in buildings—including athletic contests and all undertakings operated by the insured—Spectator Liability.' " *Ducks,* 39 A.D.2d at 568, 331 N.Y.S.2d 743. In sustaining the insurer's disclaimer of coverage, the court held that

> the quoted language in the insurance policy regarding the risks being assumed by the [insurer] manifests an intent to insure only that liability resulting from spectators being present in the building for exhibitions, athletic contests or any other undertaking operated by insured (plaintiff), and not for the risk of the participatory sport of ice skating.

*Id.* Further, the court found "no ambiguity in the language of the policy." *Id.*

Mount Vernon's argument that *Lionel* and *Ducks* provide a sufficient basis for its disclaimer of coverage here is misplaced. Neither case stands for Mount Vernon's assertion that classifications alone may serve to limit coverage. *Lionel* dealt with a situation covered by a specific exclusion provision in the policy. And *Ducks* involved a claim that clearly was not covered by the policy. Mount Vernon asserts that the case here is "indistinguishable" from those cases. That is just not so. The question before us is not whether an exclusion applies or whether the specific coverage provided does not include a particular risk. The question before us is whether the Policy's classification listings themselves constitute a limitation. The Policy at issue lacks *any* language limiting coverage to "carpentry" and instead covers "those sums that [Belize] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.' "

Whether under New York law classifications may modify insurance coverage under certain circumstances was the issue before the court in *Columbia.* In that case, an insured county in New York

sought coverage under its general liability policies for a claim brought against it relating to harmful discharges of solid waste. The insured's policies provided coverage for both personal injury and property damage. *Columbia,* 83 N.Y.2d at 624, 612 N.Y.S.2d 345, 634 N.E.2d 946. The policies contained specific exclusions for pollution-related bodily injury and property damage. *Id.* The New York Court of Appeals held that the exclusions applied, denying coverage. *Id.* One of the arguments presented by the county to avoid the exclusion provisions was that the policy contained a schedule that listed "Garbage or Refuse Dumps" as a rating classification, and that coverage existed under this schedule. *Id.* at 629, 612 N.Y.S.2d 345, 634 N.E.2d 946. The court rejected this argument, stating that "[t]he schedule expressly states that the rating classifications, except as specifically provided elsewhere, do not modify any of the provisions of the policy. Nowhere do the policies provide that the rating classifications alter the covered risks or exclusions." *Id.*

Mount Vernon argues that *Columbia* is distinguishable because "[i]n the case at bar, there is no language in the policy neutralizing the effect of the rating classifications." While the Policy here does not contain express language neutralizing the classifications, we think that Mount Vernon's reading of *Columbia* is both incorrect and inconsistent with New York law. The court in *Columbia* did not base its holding merely on the fact that the policies at issue contained language indicating that the classifications were not meant to alter the scope of coverage. It also based its holding on the finding that "[n]owhere do the policies provide that the rating classifications alter the covered risks or exclusions." *Id.* More importantly, adoption of Mount Vernon's argument would allow insurance companies to limit the scope of coverage based merely on the classifica-

tions contained in an insurance policy. This result would run contrary to the New York requirement that an exclusion must be stated in "clear and unmistakable language" that is not subject to another reasonable interpretation. The limitation argued for by Mount Vernon is by no means stated in clear and unmistakable language, and no reasonable interpretation can make it so. The Policy simply fails to provide that the classifications define the covered risks.

Mount Vernon's principal argument would enable an insurer to limit its policy coverage through classification listings without alerting the insured to the limitation. Were we to accept this argument, insurers would be permitted to argue for limitations of all kinds by invoking the stand-alone words of classification not otherwise referred to in a policy. If Mount Vernon wished to limit the coverage based on classifications, it should have done so specifically. Mount Vernon contends that it calculated its premiums based on the number of Belize's employees engaged in carpentry. However, it failed to include in its Policy any indication that it limited its risk to carpentry operations. It therefore is precluded from denying coverage here.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.