■ EXECUTIVE RISK INDEMNITY, INC., Appellant, v STARWOOD HOTELS & RESORTS WORLDWIDE, INC., et al., Respondents. [951 NYS2d 13]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered August 1, 2011, which, insofar as appealed from as limited by the briefs denied a motion by plaintiff, Executive Risk Indemnity, Inc. (Executive Risk), for summary judgment and granted a cross motion by defendants Starwood Hotels & Resorts Worldwide, Inc. and Sheraton Operating Corporation (jointly Starwood) for partial summary judgment, unanimously reversed, on the law, with costs, Executive Risk's motion granted, Starwood's cross motion denied, and it is declared that Executive Risk has no duty to defend or indemnify Starwood in the underlying action that was brought against it by nonparty Castillo Grand, LLC (Castillo).

This appeal involves disputed claims for coverage under two successive professional liability policies issued by Executive Risk to Starwood. The period of the initial policy (the 05-06 policy) ran from April 10, 2005 to June 10, 2006. The period of the subsequent policy (the 06-07 policy) ran from June 10, 2006 to June 10, 2007. Each policy was a "claims made" or "claims made and reported" policy under which coverage was available only with respect to claims first made and reported in writing during the applicable policy period or extended reporting period, if any.

In 2001, Starwood and Castillo entered into a contract for the construction and management of a luxury hotel. The contract required Starwood to, among other things, provide Castillo with a design guide, and review and approve plans for the hotel and for the selection of its interior designer. On October 25, 2005, Castillo wrote Starwood, complaining that Starwood had caused delays and cost overruns by failing to meet its responsibilities in implementing the hotel's design. Castillo demanded $18,294,500 in damages, stating that it was prepared to resort to arbitration, mediation or litigation if its differences with Starwood could not be resolved.

On July 21, 2006, Castillo brought the underlying action against Starwood in federal court. Like the October 25, 2005 letter, Castillo's complaint set forth allegations of Starwood's failure to discharge its duty to implement the hotel's design. By letter dated August 16, 2006, Starwood gave Executive Risk notice of the Castillo litigation and requested a defense invoking the 05-06 policy "or any other applicable policies." Claiming that the notice was untimely, Executive Risk denied coverage with respect to the 05-06 policy citing one policy provision that

required the reporting of claims during the policy period and another that required the insured to report claims as soon as practicable. Executive Risk also denied coverage with respect to the 06-07 policy on the ground that Castillo's October 2005 letter and the July 2006 litigation were to be treated as a single claim made at the time of the October 2005 letter, eight months before the 06-07 policy period commenced. Executive Risk made the same assertions in the instant amended complaint for declaratory judgment. The motion court denied Executive Risk's motion for summary judgment and granted Starwood's cross motion to the relevant extent of finding that Castillo's October 2005 letter did not constitute a claim within the meaning of the 05-06 policy and that Castillo's July 2006 litigation was a claim that was made and reported during the 06-07 policy period. The court therefore declared that Executive Risk was obligated to defend and indemnify Starwood under the 06-07 policy in connection with "the various litigations commenced by Castillo." We reverse.

It is undisputed that Castillo's October 25, 2005 letter and its July 16, 2006 federal court complaint involved the same allegations of Starwood's defaults in designing the hotel. As noted above, coverage under a "claims made" policy applies to claims made and reported during a given policy period. Executive Risk therefore argues that Castillo's October 2005 letter and its July 2006 lawsuit represented a single claim that was made but not reported during the 05-06 policy period. This argument is refuted by the 05-06 policy itself.

The 05-06 policy defines a "claim" as "any civil action, suit, proceeding or demand by any person or entity seeking to hold the Insured responsible for monetary damages as a result of a Wrongful Act actually or allegedly committed by the Insured or by any other person for whose Wrongful Acts the Insured is legally responsible." A "wrongful act" is, in turn, defined as "any actual or alleged act, error or omission committed solely in the performance of, or failure to perform Professional Services." Under the 05-06 policy, " 'Professional Services' means only services performed for others for a fee and which are listed in ITEM 6 of the Declarations." The only professional services listed in Item 6 were "[f]ranchiser, hotel and property manager, mortgage banker, mortgage broker, travel agent, title agent, real estate agent and real estate broker as well as incidental and related computer and print publishing services."

A court interpreting an insurance policy must give its words their plain and ordinary meaning (*Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.*, 60 NY2d 390, 398 [1983]). Therefore, based on

the policy's language elaborating on what was meant by the term "Professional Services," we reject Executive Risk's argument that the professional services set forth under Item 6 encompassed the design work Castillo complained about in its October 2005 letter. Because Starwood's design work was not a professional service under the 05-06 policy declarations, Castillo's October 2005 letter did not set forth a wrongful act. No claim was therefore made under the 05-06 policy.

Similar to the 05-06 policy, the 06-07 policy defined a claim as a written demand or civil proceeding against an insured for a "Wrongful Act." The two policies differed to the extent that the 06-07 policy defined a "wrongful act" as an act, error or omission committed or allegedly committed or attempted "solely in the performance of or failure to perform Insured Services." Unlike the definition of "professional services" under the 05-06 policy, the definition of "insured services" under the 06-07 policy included "interior and exterior design and decorating consulting services." Such services were the subject of Castillo's federal court complaint. Accordingly, we find that the Castillo litigation constituted a claim that was made and reported to Executive Risk during the 06-07 policy period. For reasons that follow, the motion court should have nevertheless found the claim fell within an exclusion of the 06-07 policy.

The 06-07 policy had a "prior pending" exclusion by which no coverage under the policy was available "based upon, arising from, or in consequence of any written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any insured on or prior to [the June 10, 2006 inception date], or the same or substantially similar fact, circumstance or situation underlying or alleged therein." The motion court concluded that the prior pending exclusion did not apply to Castillo's October 2005 demand letter. Here, Starwood argued that Castillo's demand could not have been "pending" within the meaning of the exclusion because a demand is not generally understood to be something that is undecided or awaiting decision in the same sense as a judicial proceeding. Starwood's interpretation of the exclusion is erroneous for two reasons. First, it renders meaningless the exclusion's use of the word "demand." It is settled that "[a]n insurance contract should not be read so that some provisions are rendered meaningless" (*County of Columbia v Continental Ins. Co.*, 83 NY2d 618, 628 [1994]). Moreover, the adjective "pending" can, in fact, describe a demand insofar as it means, among other things, "in question," "open to discussion," "under consideration" and "still in debate" (Burton's Legal Thesaurus 448 [4th ed 2006]). Without

doubt, these synonyms all describe the status of Castillo's demand when the 06-07 policy commenced on June 10, 2006. Accordingly, the prior pending exclusion of the 06-07 policy precluded coverage for the Castillo litigation. Concur—Tom, J.P., Saxe, Acosta, DeGrasse and Román, JJ.