State Insurance Fund, Plaintiffs,

against
Selective Insurance Company of America, Defendants.


652892/13

Appearances
Plaintiff MONTFORT, HEALY, McGUIRE & SALLEY
840 Franklin Avenue
P.O. Box 7677
Garden City, NY 11530-7677 
Defendant
MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP
Wall Street Plaza
88 Pine Street, 24th Floor
New York, NY 10005
By: Michael J. Marone, Esq., Eric G. Siegel, Esq. 


Charles E. Ramos, J.

In motion sequence 001, Selective Insurance Company of America ("Selective") moves pursuant to CPLR 3212 for summary judgment, dismissing the State Insurance Fund's ("SIF") claims with prejudice.
In motion sequence 002, SIF moves for an order denying Selective's motion for summary judgment, and for summary judgment in its favor for a declaration that: (a) Selective covered and/or insured All Waste Interiors, LLC ("All Waste") for contractual indemnity; (b) Selective wrongfully disclaimed coverage to All Waste for contractual indemnity under the Commercial Umbrella Liability portion of the policy ("Umbrella Policy"); (c) under the anti-subrogation doctrine, Selective was barred from impleading its insured All Waste and passing on liability to SIF; (d) Selective's partial disclaimer was untimely as a matter of law and legally insufficient, and All Waste was prejudiced as a result of Selective's control of litigation until the eve of trial; and (e) Selective is estopped from denying coverage under the Commercial Umbrella Liability coverage section of the policy; (f) SIF and Selective are co-insurers on a 50/50 basis up to Selective's combined limits of $2 million; and (g) such other further relief as this Court may deem just, proper, and equitable.
For the reasons set forth below, this Court grants SIF's motion for summary judgment, in part, and denies Selective's motion for summary judgment, in its entirety.
Background
The facts set forth herein are taken from the pleadings, affidavits and Rule 19-A Statements, and are not in dispute except where noted.
Selective issued a standard commercial general liability insurance policy to All Waste, a New Jersey insured, in effect from May 24, 2007 to May 24, 2008, policy number S1179775 ("Selective Policy") (Pl. Rule 19-A Statement, ¶ 1). The Selective Policy consists of a standard commercial general liability primary policy with limits up to $1,000,000 and the Umbrella Policy with limits up to $1,000,000 (Pl. Rule 19-A Statement, ¶ 2). The Selective Policy provides coverage for "property damage" and "bodily injury" caused by an "occurrence" (Def. Rule 19-A Statement, ¶ 1).
On February 11, 2008, Alejandro Alpirez ("Alpirez"), an employee of All Waste, was injured while performing construction work at 1107 Broadway, New York, New York, within the scope of his employment with All Waste.
During the relevant time period, SIF also insured All Waste under a Workers' Compensation and Employers' Liability Policy ("SIF Policy"), which provided coverage to All Waste for common law or negligence claims arising out of injuries that occurred during the scope of employment, but excluded coverage for any contractual liability (Pl. Rule 19-A Statement, ¶ 2).
On March 31, 2008, Mt. Hawley Insurance Company ("Mt. Hawley") sent a letter to Selective, notifying them that Alpirez made a claim against 1107 Broadway, LLC, Mt. Hawley's policyholder ("Mt. Hawley 2008 Letter"), and requesting indemnification and additional insured status for 1107 Broadway and WBB Construction, Inc. ("WBB"), the general contractor (Baranowicz Aff., Ex. P).
On May 5, 2008, Selective responded to Mt. Hawley ("Selective's May Letter"), indicating that the Mt. Hawley 2008 Letter was the first notice they had received of this accident and any potential claims against All Waste (Baranowicz Aff., Ex. M). Selective's May Letter also denied Mt. Hawley's request for tender and additional insured status under the Selective Policy because no lawsuit had yet been brought and All Waste had not made a formal request for defense or indemnification (Baranowicz Aff., Ex. M).
On May 14, 2008, Alpirez commenced an action (Index Number 106699/08) ("Underlying Action") in New York County Supreme Court against the WBB and 1107 Broadway, LLC, 1107 Broadway Mezz I, LLC, 1107 Broadway Mezz II, LLC, Tessler Development, LLC, 200 Fifth LLC, and 200 Fifth Avenue, LLC (collectively, "Owners"), for injuries sustained on February 11, 2008 (Complaint, ¶ 5).
All Waste is a subcontractor of WBB and had previously agreed to procure insurance on behalf of the Owners and General Contractor (Pl. Rule 19-A Statement, ¶ 7).
In the Underlying Action, Alpirez alleged that, while employed by All Waste, he sustained serious and severe injuries as a result of his fall from a scaffold at an elevated height while working at the Subject Premises (Pl. Rule 19-A Statement, ¶ 9).
By letter dated October 5, 2008, Selective agreed to accept the defense and indemnification of 1107 Broadway LLC, 1107 Broadway Mezz I, LLC, 1107 Broadway Mezz II, [*2]LLC, Tessler Development, and WBB, as additional insureds under the Selective Policy in the underlying action, with a total combined coverage limit of $2 million per occurrence (Pl. Rule 19-A Statement, ¶ 11). 
On October 15, 2008, Selective, in connection with its agreement to defend WB and Owners, issued a reservation of rights letter ("Reservation of Rights Letter") (Marone Aff., Ex. C). Pursuant to the Reservation of Rights Letter, Selective indicated that its assumption of indemnification was limited to $1,000,000 per occurrence general liability policy, and if damages should be awarded in excess of this policy limit and other primary coverage available to the General Contractor and Owners "are subsequent to the Selective Policy, before the umbrella coverage of $1,000,000," and Selective would not be liable for any excess over its $2 million combined policy limits (Marone Aff., Ex. C).On June 1, 2009, Selective, representing defendants WBB, 1107 Broadway, LLC, 1107 Broadway Mezz I, LLC, 1107 Broadway Mezz II, LLC, and Tessler Development, LLC brought a third-party action ("Third-Party Action") against All Waste, as Selective's insured, seeking recovery for all common-law indemnity and/or contractual indemnity claims (Pl. Rule 19-A Statement, ¶ 12).
On July 10, 2009, Selective, through a letter captioned "Partial Disclaimer," agreed to defend and indemnify All Waste for its contractual indemnification claim up to the primary policy limits of $1,000,000 under the primary policy, but purported to deny coverage under the Umbrella Policy for the contractual indemnification claims, and denied coverage for common law indemnification and contribution claims under the terms of the Umbrella Policy on the basis of an exclusion in the endorsement for "bodily injury" to an "insured" arising out of and in the course of employment by the insured ("July 2009 Disclaimer") (Def. 19-A Statement, ¶ 19).
On July 21, 2009, counsel retained by Selective to represent 1107 Broadway and WBB served a response to SIF's Notice of Insurance, indicating that there was $1 million liability coverage and no excess coverage (Pl. 19-A Statement, ¶ 20).
Subsequently, Selective's counsel responded to a preliminary conference order dated July 23, 2009 in the underlying action, indicating that All Waste was insured under Selective's general liability policy, which provides primary coverage of $1 million and umbrella coverage of $1 million (Pl. 19-A Statement, ¶ 19).
In October or November 2010, Selective's counsel commenced a second third-party action ("Second Third-Party Action") on behalf of All Waste and Selective against SIF, asserting that Selective and SIF were co-insurers, with Selective covering the claim for contractual indemnity and SIF covering the claim of common-law negligence, thereby entitling Selective to one-half of the disbursements, costs, reasonable attorney fees, and expenses incurred in the defense of All Waste (Pl. 19-A statements, ¶ 12).
The Underlying Action settled for $11,500,000, wherein SIF agreed to pay $10,500,000 of the gross settlement, waive its Workers Compensation lien, and pay two outstanding medical bills ("Settlement") (Complaint, ¶ 23).
Under the Settlement, Selective agreed to pay its full primary policy limits of $1 million on behalf of WBB, 1107 Broadway LLC, 1107 Broadway Mezz I, LLC, 1107 Broadway Mezz II, LLC, Tessler Developments, LLC, and All Waste (Baranowicz Aff., Ex. L).
SIF and All Waste also reserved their right to bring a declaratory judgment action regarding Selective's disclaimer of coverage to All Waste with respect to the $1 million excess [*3]coverage under the Umbrella Policy (Baranowicz Aff., Ex. L).
In response to Selective's interrogatory demands, SIF took the position that:
The exclusion contained in Endorsement CXL 35 01 99 entitled "Employers' Liability Exclusion" relied upon by Selective does not exclude coverage on the Grounds that "Section 1-Coverages" specifically provides for Commercial Umbrella Liability coverage for contractual indemnity in circumstances such as that herein[,] where coverage is afforded by underlying insurance and the underlying insurance policy limits have been exhausted. (Def. 19-A Statements, ¶ 28).
Discussion
In its first cause of action, SIF seeks a declaration that Selective's claim for contractual indemnity that it asserted in its third party action against its insured, All Waste, falls within the umbrella portion of Selective's policy because it is related to a claim for "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" during the policy period for which there was coverage under the "underlying insurance," where the "underlying insurance" was exhausted. 
Section I(1) of the Selective Policy provides, in relevant part:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.(Marone Aff., Ex. A).
Section I (1)(b)(1) & (2) of the Selective Policy provides:
This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or property damage is caused by "an occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period; (Marone Aff., Ex. A).
Section I(2)(b) & (e) of the Selective Policy lists the exclusions relevant to the instant action, and provides, in relevant part:
This insurance does not apply to:
(b) contractual liability
"bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
***
(e) Employer's liability
"Bodily injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business; or
This exclusion applies:
(1) Whether the insured may be liable as an employer
Or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury
This exclusion does not apply to liability assumed by the insured under an "insured contract"
(emphasis added) (Marone Aff., Ex. A).
Section V(9)(f) defines an insured contract as:
(f) That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality under which you assume the tort liability of another party to pay for "bodily injury" or "property damages" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement".
(Marone Aff., Ex. A)
Section I(2) of the Umbrella Policy provides, in relevant part:
This insurance applies to "bodily injury" or
"property damage" only if:
(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(b) The "bodily injury" or "property damage" occurs during the policy period; (Id.).
Section I(B) of the Umbrella Policy details the applicable exclusions, and provides, in relevant part, as follows:
(2) Contractual liability
Any obligation or liability assumed by the insured under any contract or agreement.
This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance"
***
(8) Employer's Liability
"Bodily injury" to:
(a) An employee of the insured arising out of and in the course of employment by the insured;
(b) The spouse, child, parent, brother or sister of that employee as a consequence of a. above.
This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance"(Id.).
A subsequent endorsement ("Endorsement") to the Umbrella Policy provides, in relevant part:
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ
IT CAREFULLY.
This endorsement modifies insurance provided under
The following:
COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
This insurance does not apply to "Bodily Injury" to:
1. An "Employee" of the insured arising out of and in the course of employment by the insured...
This exclusion applies:
1. Whether the insured may be liable as an employer or in any other capacity; and
2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
(emphasis in original) (Id.).
Selective asserts that Monteleone v Crow Const. Co., 242 AD2d 135 [1st Dept 1998]), is instructive on this issue, and supports its argument that the unambiguous terms of the Endorsement alter the terms of the Umbrella Policy and clearly bars coverage for the contractual indemnification claims against All Waste.
In Monteleone, the Court analyzed an endorsement in a general liability coverage policy containing identical language to the endorsement contained in the umbrella policy at issue here. The First Department held that there is no coverage for the contractual indemnification claims asserted against the insured, reasoning that policy exclusions "must be read in seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another" (Id., at 140-41).
In contrast, SIF argues that the language in the endorsement of the Umbrella Policy and relied on by Selective does not address or negate coverage under these circumstances, where there is coverage under the underlying policy and the underlying insurance has been exhausted. Here, the claim against All Waste for contractual indemnification clearly involves a "bodily injury" caused by an "occurrence" in the "coverage territory" during the policy period, with coverage under the "underlying [primary] insurance" with the "underlying insurance" being exhausted" (Marone Aff., Ex. A).
The language in the Umbrella Policy's exclusion relating to contractual liability specifically contains a carve out and provides that the exclusion does not apply to coverage provided by the "underlying" or primary policy. To this extent, SIF argues that coverage under the umbrella portion is unaffected by the Endorsement's terms. This Court agrees. 
Selective fails to establish, as a matter of law, that the Endorsement bars coverage for claims of contractual indemnification against All Waste. When looking at the plain language of the Selective Policy, the language in the umbrella portion specifically provides that there is coverage for this type of claim, where the underlying limits have been exhausted.
Further, when analyzing an endorsement to an insurance policy, it must be read in conjunction with the policy, giving full effect to the terms of the policy except those altered by the endorsement (County of Columbia v Continental Ins. Co., 83 NY2d 618 [1994]; Weedo v Stone-E-Brick, Inc., 81 NJ 233 [1979]). As specifically stated, the umbrella policy and the accompanying Endorsement should be read in conjunction with the Selective Policy as a whole; the phrase "this exclusion does not apply to the extent that coverage is provided for the insured by underlying insurance" clearly serves to afford coverage under the umbrella policy for contractual indemnification claims that are covered under the general policy. Had the drafters [*4]intended that the Endorsement would bar coverage under the Umbrella Policy when coverage is afforded in the general policy, it would have explicitly stated so in the Endorsement's plain terms, and to read it in any other manner would be to render the policy meaningless.
Moreover, SIF is correct in its assertion that under both New Jersey and New York law, any ambiguity should be construed against Selective, the drafter of the Selective Policy (Matter of Mostow v State Farm Ins. Co., 88 NY2d 321, 326-27 [1996]; Rothschild v Foremost Ins. Co., 653 F.Supp.2d 526 [DNJ 2009]). However, even more persuasive, no ambiguity exists here.
The terms of the Endorsement cannot be read to negate the clear language of the exclusions in the Umbrella Policy, which provides coverage under the Umbrella Policy to the extent that there is coverage under the "underlying insurance," unless expressly stated that the endorsement would supercede the terms of the Umbrella Policy (Marone Aff., Ex. A). Since SIF has established that the claim for contractual indemnification falls within the ambit of coverage under the general commercial policy, SIF is entitled to indemnification under the Umbrella Policy of up to $1 million.
In its second cause of action, SIF argues that under Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465 [1986]), Selective was barred under the anti-subrogation doctrine from passing along the risk to All Waste.
The anti-subrogation doctrine narrowly applies if "an owner and a contractor are insured under two policies, covering the same risk, issued simultaneously by the same insurer" (North Star Reinsurance Corp. v Continental Ins. Co., 82 NY2d 281 [1993]).
Since the Court finds that the claim is covered under the clear terms of the Umbrella Policy, the anti-subrogation doctrine is applicable (Rosato v Karl Koch Erecting Co., 865 FSupp 104 [EDNY 1994]). Therefore, SIF is entitled to judgment in its favor as demanded in the Complaint
Under SIF's third cause of action, SIF alleges that the July 2009 Disclaimer was untimely and ineffective as a matter of law (Complaint, ¶ 43). SIF maintains that because the disclaimer was untimely and on the eve of trial, All Waste was significantly prejudiced, and Selective, as a matter of law, is estopped from denying coverage to All Waste for the contractual indemnification claims (Complaint, ¶¶ 43, 46).
Since the Court rules that All Waste is covered for contractual indemnity under the Umbrella Policy, it need not address the issue of equitable estoppel.
Accordingly, it is hereby
ORDERED that State Insurance Fund's motion for summary judgment is granted and the clerk should enter judgment accordingly in favor of State Insurance Fund, settle order; and it is further
ORDERED that Selective's motion for summary judgment is denied, in its entirety.
Dated: July 13, 2017
ENTER:
_______________
J.S.C.